HAYNER *v.* JAMES and others.

The recorder of the city of Troy has jurisdiction in proceedings supplementary to execution, in actions commenced in the Supreme Court.

Though the constitution has abolished the office of Supreme Court commissioner, its functions remain and may be distributed by the legislature among any of the judicial officers authorized by the constitution.

Hayner *v.* James.

The act (*ch.* 121 *of* 1849) giving to the recorder of Troy the powers of a justico of the Supreme Court at chambers and of a county judge, including jurisdiction in proceedings supplementary to execution, is constitutional.

APPEAL from a judgment of the Supreme Court given on demurrer. The complaint set forth that prior to March 1, 1849, the defendant, Randall James, was insolvent, and indebted to various persons, and among others, to James Simpson, who, in April of that year, recovered a judgment against him, Randall James, in the Supreme Court for $522-66; that after the return of an execution unsatisfied, Simpson commenced proceedings supplementary to the execution before the recorder of Troy, under which the plaintiff was appointed receiver of the property and effects of Randall James; and that James thereupon, pursuant to an order of the recorder, executed to the plaintiff, as receiver, an assignment of all his property, real and personal and all equitable interests, things in action, and other effects which belonged to or were held in trust for him; that previously, and on the 13th and 16th of March, 1849, James had made certain conveyances of real estate to the defendant, Fowler, on account of pretended debts due to him, Fowler, and to the defendant, John James, which conveyances, it was alleged, were without actual consideration, and were made to defraud the creditors of R. James. The prayer of the complaint is that the conveyances be adjudged fraudulent and void, and be set aside. The defendant demurred on the ground, among others, that the complaint did not set forth a cause of action, and that it did not appear that the plaintiff was a proper party to sue for the relief claimed. This depended upon the question whether the recorder of Troy had authority to entertain these proceedings.

The office of recorder was created by the act of incorporation of the city of Troy. (*Laws of* 1816, 129.) That act (§ 56) constitutes a Court of Common Pleas, to be called a Mayor's Court, which may be held by the mayor or recorder, with or without aldermen. Section thirty-five invests the

Hayner *v.* James.

court and the judges thereof with the powers then appertaining to the Mayor's Court of Albany and its judges, and confers upon the recorder the same power and authority as were then vested in the recorders of New-York, Albany, and Hudson, by § 11 of an act concerning the Supreme Court, passed February 25th, 1812. The latter section gives the power of a judge at chambers.

The main question was whether the act (*ch.* 121 *of* 1849, § 4), purporting to confer upon the recorder of Troy jurisdiction of proceedings supplementary to execution, is constitutional. That act is as follows: " The recorder of the city of Troy shall, in addition to the powers conferred upon him by law, have and exercise the same powers conferred upon county judges by section twenty-seven of ' An act to amend an act in relation to the judiciary, passed May 12th, 1847,' passed December 14th, 1847, and said recorder shall further have and exercise within said city the powers given to a county judge by sections 247 to 257 inclusive, and by section 364, of the act entitled ' An act to simplify and abridge the practice, pleadings and proceedings of the courts of this state,' passed April 12th, 1848, and also all the powers of a judge of the Supreme Court at chambers; and in case of the absence or inability of said recorder, then the mayor of said city is authorized to perform all the duties imposed on said recorder."

The powers conferred upon a county judge by §§ 247 to 257 of the Code of 1848, include full jurisdiction over proceedings supplementary to execution, and § 364 confers the powers of a justice of the Supreme Court, out of court, in actions pending therein.

Judgment was given for the defendants on the demurrer, which, on appeal, was affirmed by the Supreme Court at general term in the fourth district, and the plaintiff appealed to this court.

*W. A. Beach,* for the appellant.

*Nicholas Hill,* for the respondents.

Hayner *v.* James.

COMSTOCK, J.   The power of the recorder of Troy to appoint the plaintiff receiver of Randall James, a judgment debtor, has been defended on the ground that in entertaining jurisdiction of proceedings supplementary to execution that officer exercised merely the functions which, prior to the constitution of 1846, belonged to a justice of the Supreme Court at chambers, or to a Supreme Court commissioner. On the other side the power in question is denied, in the first place, on the ground that the constitution has perpetually abolished the office of Supreme Court commissioner, and that the functions which belonged to it cannot, any of them, be bestowed on officers of the class to which the recorder belongs.   The attempt so to bestow them, it is urged, is an attempt to restore, in substance, an office which has been forever abolished by an authority above that of the legislature.

The constitution (*Art.* 14, § 8), abolished nearly all the preëxisting judicial offices in the state, and among them that of Supreme Court commissioner, "from and after the 1st Monday of July, 1847." It must be admitted therefore that this office can no longer exist in this state; but the abrogation of the office did not annihilate the powers and duties which pertained to it.   Those powers and duties were left to be bestowed by the legislature upon other classes of officers brought into existence, or suffered to exist, by the constitution.   The office itself cannot be restored nor can a new one like it be instituted, although under a different name; but the office and the functions which belonged to it are each capable of a separate consideration.   The office as the convention thought, could be spared.   The function is absolutely indispensable in every government where law is administered.   So too the offices of chancellor, vice chancellor and master in chancery were abolished.   But the indiscriminate zeal for reform which swept away those institutions also, unable it would seem to distinguish between institutions in themselves of the highest excellence and their

accidental inconveniences, did not occasion the lapse of the principles and powers known and administered in the system of equity jurisprudence. These are so interwoven in the very frame work of civilization as to be exempt from the danger of destruction until the ignorance of so called reformers and the public credulity, which gives them their powers for mischief, shall carry society back to its original barbarism.

It is the office then, of Supreme Court commissioner, which is abolished; but the various powers which appertained to it not being lapsed, the true inquiry is whether those powers are so distributed, by other arrangements of the constitution, to and amongst other officers as to take from the legislature the authority to bestow them on the recorder of Troy. In the absence of constitutional restraints the power of the legislature to distribute them amongst any or all of the various officers composing the judicial force of the state, does not admit of a doubt. The judges of the mayor's court of Troy are a part of that judicial force. Does then the constitution expressly or by any clear implication, say that these judges cannot take the jurisdiction in question by a legislative grant? There certainly is no such express declaration, nor do I see any ground for such an implication. The constitution, it is true, provides for thirty-two judges of the Supreme Court, arranged in districts; for a county judge in each of the counties, and for local officers in counties having a certain population. But the same constitution provides also for local courts in cities, and it declares moreover (*Art.* 14, § 12), that all the preëxisting local courts of cities and villages, including by special enumeration those in the city of New-York, " shall remain, until otherwise directed by the legislature, with their present powers and jurisdiction." The Mayor's Court in Troy is one of those preëxisting courts, and the mayor and recorder are its judges.

Now, the theory of the constitution undoubtedly was, that the judicial forces, thus provided for, were sufficiently

Hayner *v.* James.

numerous and sufficiently spread throughout the state to discharge the particular functions which belonged to the office of Supreme Court commissioner, and hence that office was dispensed with; but in regard to the distribution of those functions amongst the judicial officers of the state we shall look in vain for any restraint upon the power of the legislature.   To the Supreme Court the constitution has given general jurisdiction in law and equity, and the judges as such undoubtedly take, or may take by legislative enactment, all the special powers formerly exercised by justices of the Supreme Court at chambers and by Supreme Court commissioners.   So certain appellate powers are given to the County Court, and that "court" in one clause and the "county judge" in another are made capable of taking from the legislature original jurisdiction in special cases at law and in equity.   The provision is similar in regard to local officers in the larger counties which may become entitled to such an officer.   These are the only arrangements of the constitution which bear upon the present question, and I do not see in them the slightest ground for an inference that the legislature cannot in its discretion bestow powers of the class of which we are speaking upon the judges of courts in cities. Upon the jurisdiction of those courts and upon the powers of the judges authorized to hold them, the constitution itself imposes no limit except such as the term "local" may imply. But as the constitution provides for such courts they must have, of course, a jurisdiction subject to the control of the legislature.

Great reliance has been placed upon the clause which declares the county court shall have jurisdiction "in special cases as the legislature may prescribe;" but the words which follow are, "but shall have no original civil jurisdiction except in such special cases."   Every one acquainted with the history of this provision knows that it was intended as a restriction rather than a grant; the question in the convention being whether the County Court should or should

not be a court of general jurisdiction, like its predecessor the "Common Pleas." There is no foundation, therefore, for the argument that, according to the maxim "*expressio unius*," &c., other tribunals established or provided for by the constitution cannot take such a jurisdiction as the words "special cases" were intended to designate, whatever may be the true interpretation of those words. And there is another answer to the argument founded on this provision. The special cases mentioned are given to the jurisdiction of the County Court, and cannot be said to include all, if any, of those proceedings which were carried on outside of courts before a judge at chambers or a Supreme Court commissioner.

If therefore the rule *expressio unius* excludes the jurisdiction of the judge of a city court in such proceedings, a still more direct application of the same rule will exclude the judge of the County Court also. But neither are excluded Those outside and summary powers, I repeat, are left at large by the constitution and subject to the control of the legislature; the limit of that control being that the office of Supreme Court commissioner cannot be directly or indirectly restored. A contrary conclusion might lead to the gravest consequences. If the constitution stands in the way in regard to the recorder of Troy, the same difficulty exists in regard to the judges of the Superior Court and Court of Common Pleas of the city of New-York, and all the other local courts in the state. This would lead doubtless to the subversion of many titles, acquired under proceedings before the judges of those courts.

It has also been argued, in the next place, that the proceedings supplementary to execution are, in their substance and nature, a case in equity calling for the exercise of the very powers which formerly were vested exclusively in the Court of Chancery. These proceedings, it is said, perform essentially the office of a judgment creditor's bill; that being the only remedy which, at the adoption of the constitution, the creditor had for reaching the equitable property of his

debtor on the return of execution unsatisfied.   Setting aside
the mere forms of procedure and looking at the substance
of things, it is certainly somewhat difficult to distinguish
between the former judgment creditor's bill, with its inci-
dents of discovery, injunction, receivership, &c., and the
various proceedings which the statute ( *Code of* 1852, § 292,
*&c.*) has authorized to be taken supplementary to execution.
But if we concede that such proceedings do constitute a
case of jurisdiction in equity, according to distinctions exist-
ing before the constitution and recognized by that instru-
ment, then the question next arises whether the legislature
can confer a jurisdiction of that kind upon the local courts
in cities, including the Mayor's Court of Troy.   Upon this
question I do not entertain any doubt.

It has already been observed that when the constitution
abolished the offices of chancellor, &c., the equity system
and the various powers incident to it were not lost.   It is
moreover clear that in the constitution must be found the
only restraint upon the authority of the legislature in dis-
tributing those powers amongst the judicial bodies created or
recognized by that instrument.   The question then is, can
the Mayor's Court of Troy, by a legislative act, share in the
distribution ? and this is a question which affects not only that
court but the local tribunals in all the cities of the state.
Some of these tribunals are of the highest importance, and
a large portion of their jurisdiction is equitable, according
to former distinctions.   Among these may be mentioned the
Superior Court of the City of New-York. ( *Code of Proce-
dure, tit.* 5 ; *Laws of* 1847, 641, § 21.)

The argument on this subject is understood to be, that the
jurisdiction in question is excluded by the provisions of the
constitution giving equity jurisdiction to the Supreme Court
and authorizing the legislature to confer it upon the county
judge in "special cases."   Now in regard to the Supreme
Court the constitutional grant is of "general jurisdiction in
law and equity."   It is plain therefore, that if this defini-

tion of the powers of that court is to be taken as excluding other tribunals from the possibility of sharing in one branch of its jurisdiction, the same definition will exclude them from the other branch also ; and thus we shall have a variety of courts established or recognized by the constitution without any jurisdiction, or even the capacity of receiving any from the legislature.   This is so absurd, and yet so necessary a result of the construction contended for, that such a construction must be at once abandoned.   For similar reasons the construction claimed for the provision relating to the county judge cannot be maintained.   By one clause of the constitution, the " county court " is to have jurisdiction in " special cases as the legislature may prescribe," and by another clause in the same section, " the legislature may confer equity jurisdiction in special cases upon the county judge.   The first clause would I presume include all that is given in the other.   *At all events it authorizes the legisla*ture to confer jurisdiction in special cases not of an equitable character, in other words cases at law.   If therefore jurisdiction in equity is impliedly forbidden by these clauses, or either of them, to local courts in cities, why is not legal jurisdiction also forbidden?   The argument I am considering amounts precisely to the proposition, that the express provision of the constitution concerning equity jurisdiction excludes the possibility of other provisions being made by the legislature.   But the argument will not stop at that point, nor at any point short of imposing the same restraint upon the legislative power in regard to legal jurisdiction also.   This would make the constitution somewhat more absurd than any one has hitherto supposed it to be.   If we are to adopt such theories of construction what is to be done with the local courts in cities ?   They are provided for in the same constitution along with the Supreme and the County Courts, and their jurisdiction is undefined.   They are not courts without the possibility of having powers and functions as such.   The legislature therefore must have

Hayner v. James.

authority to confer on them a jurisdiction. If they can receive it in respect to causes of legal cognizance, then why not in respect to those of equitable cognizance also?

It is not difficult to account for the clauses of the constitution relating to the Supreme and County Courts, without imputing to them a meaning which restrains the power of the legislature in giving jurisdiction to other tribunals. The old Supreme Court and Court of Chancery were abolished by abolishing the offices to which their jurisdictions were attached. The further design was to establish a new court as a substitute for both, and with their combined law and equity powers. That design was precisely accomplished by the language used : " There shall be a Supreme Court having general jurisdiction in law and equity," and I know not in what more appropriate terms the result could have been attained. Then as to the County Court: The office of " judge of the existing County Court in each county " was also abolished. The former Court of Common Pleas or County Court had no equitable jurisdiction. In providing for its successor, it was thought wise to allow such a jurisdiction in " special cases;" the general policy of the constitution being to blend the jurisdictions at law and equity in the same tribunals. But as the old county court possessed no equitable powers it was proper, if not indispensable, to mention them in providing for the new one. If the specification had not been made it would have been left at least open to question and doubt whether a jurisdiction hitherto unknown to that court was intended. These being obvious and sufficient reasons why the clauses referred to were framed as they are, all other inferences must be quite too feeble and attenuated to have any influence in opposition to the power of the legislature otherwise unquestionable.

In this case the only difficulty which leaves the conclusion in doubt is of a character not yet mentioned. The jurisdiction in proceedings supplementary to execution is given by the act of 1849 (p. 165), in terms, to the recorder of

Troy and not to the "Mayor's Court" of that city. The mayor is authorized to act only in case of the "absence or inability" of the recorder. By the charter of Troy passed in 1816, the mayor, recorder and aldermen, or the mayor and recorder jointly, or either of them singly, with or without the aldermen, were authorized to hold a "Court of Common Pleas" in and for that city, called "the Mayor's Court." This was the court in existence at the adoption of the constitution in 1846. Now, the aldermen are not named in the act of 1849, nor is the mayor, except in a certain contingency, and therefore they do not share in the jurisdiction which that statute confers. In what capacity, then, is it given to the recorder? If it is conferred on him as holding the Mayor's Court, then, although the proceedings in question be deemed to constitute a case in equity, the power, as we have already seen, is constitutionally bestowed. If not so given, then the further question arises, whether equity jurisdiction can be conferred on the recorder of Troy as a local magistrate to be exercised when not sitting as the Mayor's Court.

These difficulties, we think, are not insurmountable. As a question of power, the Mayor's Court may be abolished altogether, or its jurisdiction may be regulated at the pleasure of the legislature; and I see no reason to doubt that the whole or any particular part of its jurisdiction may be given to the recorder, as one of its judges, to the exclusion of the others. The organization of courts, the changes in such organization, and the regulation of their powers are as clearly the appropriate subjects of legislation as any other can be; and we find in the constitution no restraints whatever in respect to courts of the class we are now considering. (*Art.* 14, § 12.) As a question upon the effect of a legislative act, the distinction between giving a particular power to the Mayor's Court by name, and giving it to the judge authorized to hold the court without any associate, is hardly appreciable. The act of 1849 confers the power now in

question on the recorder, and only contingently on the mayor; but by the constitution of the court the recorder can hold it alone. It certainly is not a constitutional principle that a new function may not be added without associating the mayor and aldermen in the discharge of that function; and if the nature of that function be such that it appertains to the court, and not to the magistrate out of court, then the legislature should be deemed to have bestowed it accord- ingly.

But if we grant that the statute of 1849, in conferring certain judicial powers upon the recorder of Troy, regards him simply as a local magistrate in that city and intends that he is to exercise those powers outside of the court of which he is a judge, then what are the consequences? It will be for those who assert the invalidity of the statute to find some constitutional prohibition on which the assertion is based. I can find no such prohibition.

I might properly have noticed, in another connection, the theory that the constitution has created a complete judicial system. Nothing can be a greater mistake than this theory. The more we examine and apply reasonable rules of inter- pretation, without preconceived notions, the more clearly, I am persuaded, we shall find this to be the result: that the constitution has provided for the judicial forces of the state, so that new forces cannot be added outside of those provi- sions, and that with this limitation there is very little restraint upon the authority of the legislature in the distri- bution of the powers and functions which belong to our system of jurisprudence.

The judgment of the Supreme Court must be reversed and judgment must be rendered against the defendants on the demurrer to the complaint, with leave to answer in the usual terms.

DENIO, J. The most material of the questions dis- cussed in this case is whether the recorder of the city of

Troy had jurisdiction to entertain the proceedings which resulted in the appointment of the plaintiff as receiver. The Code confers the jurisdiction upon a judge of the court in which the judgment against the debtor proceeded against was recovered, or a county judge of the county. (§ 292.) An act of the legislature, passed in 1849, entitled " An act in relation to the recorder of the city of Troy," ( *Laws of* 1849, 164) enacts that the recorder shall have and exercise within said city, among other powers, the powers given to a county judge by sections two hundred and forty-seven to two hundred and fifty-seven inclusive of the Code of Procedure. These sections provide for proceedings supplementary to the execution, and are substantially the same as sections two hundred and ninety-two to three hundred and two of the amended Code now in force. The power of the recorder was therefore ample so far as the legislature could confer it, and the only question for consideration is, whether the statute of 1849, in the particular referred to, was a violation of the constitution of this state. The counsel for the defendants maintains that the remedy established by the Code, under the name of " Proceedings supplementary to the execution," is a branch of the jurisdiction of a court of equity, and that the constitution ( *Art.* 6, § 3) having established a Supreme Court with general jurisdiction in law and equity, and having abolished the former court of chancery as well as the former Supreme Court, all judicial business cognizable in courts of equity must be transacted in the Supreme Court organized under the constitution, except so far as the constitution itself has otherwise provided; and that the only authority for conferring equitable judicial powers upon any other tribunal, is found in section fourteen of the same article, in which it is declared that the legislature may confer equity jurisdiction in special cases upon the county judge. These provisions of the constitution, it is argued, are in their nature exclusive, and by inevitable implication forbid the legislature from committing the juris-

diction exercised by the recorder in this case to any court or magistrate other than the Supreme Court and the county judge.

The first inquiry which presents itself is whether the proceeding established by the sections of the code which have been referred to, is a branch of the jurisdiction of the Court of Chancery. It is no doubt true that a process similar in some of its results but far more extensive and remedial in its results, was, at the time of the formation of the constitution, conducted in the Court of Chancery under the name of proceedings by creditor's bill. That process was commenced by a bill of complaint and was followed by regular pleadings according to the forms in use in that court, and resulted in a decree by which the rights not only of the judgment debtors, but of all other persons who were made defendants, as trustees of the debtor or fraudulent alienees of his property, were conclusively determined; and final process according to the course of proceedings in that court might issue upon its decree. It was in short a regular suit in equity, founded in part upon principles inherent in that court but also regulated by statute. (*Hadden* v. *Spader*, 20 *John.*, 554.) Full power is given to the legislature, by the constitution to alter and regulate the jurisdiction and proceedings in law and equity; (*art.* 6, § 5;) and this power has been unsparingly exercised, independently of the particular enactments under consideration. I think it will appear from an examination of the provisions of the Code regulating the proceedings supplementary to the execution, that the magistrate in these cases is not clothed with equitable jurisdiction. The general object of the proceeding is to enable the creditor to enforce the execution of a judgment already obtained. Before a step can be taken, a competent court must have adjudged against the debtor the amount of debt or damages claimed. The magistrate before whom the proceedings are had can give no judgment or make any order affecting in the slightest degree the rights

of any person claiming to hold property under title derived from the debtor. The remedy afforded to the creditor is the compelling of the debtor under pain of imprisonment to hand over for the use of the creditor, to be sold and applied on the judgment, such property as he may own, and to create a trustee for the creditors in whose name the trustees of the debtor, or persons owing him or having his property in their hands, may be prosecuted for the benefit of the creditors. As auxiliary to these objects the officer is empowered to institute an inquiry in order to ascertain, in a summary way, what property the debtor possesses, subject to the remedy, and to forbid the transfer of it pending the proceeding. This differs materially from the remedy afforded in chancery by creditor's bill. That remedy was based upon the jurisdiction which courts of equity possessed to determine conflicting claims in cases of trust and fraud. When the question as to creditors' bills first came before the Court of Errors, they were sustained as falling under the ordinary heads of equity jurisdiction. Judge WOODWORTH stated the question to be " whether a debtor who has placed his funds *in the hands of a trustee* where they cannot be reached by an execution at law, can put his creditor at defiance and enjoy the benefit of those funds which ought to be appropriated to the payment of his debts." (*Hadden* v. *Spader, supra,* 564.) In the summary proceeding under consideration all litigation between the creditor and a third person is prohibited. It is only in cases of property held confessedly and nakedly for the use of the debtor, that the process can operate at all upon a third person. The officer can try no question of trust or of fraud. If the grounds for such a litigation are presented they are referred to the appropriate court and to the appropriate action, to be prosecuted by the receiver. I am of opinion therefore that the proceeding does not bring into exercise the peculiar jurisdiction of a court of equity, and that the statute is not obnoxious to the objection that it creates a tribunal other than that provided by

the constitution to hear and determine cases of equitable cognizance.

The remedy in this respect afforded by the Code is similar in its scope to that furnished by the act " to abolish imprisonment for debt and to punish fraudulent debtors." (*Laws of* 1831, *ch.* 300.) By that act and the statutes amending it, if a judgment debtor fraudulently concealed his property or refused to apply his choses in action to the payment of a judgment, he might be proceeded against before a magistrate; and if the complaint was sustained, he was imprisoned until he would transfer the property to an assignee for the benefit of the creditor. (*Hall* v. *Kellogg*, 2 *Kern.*, 325.) This statute was in full operation at the time of the adoption of the constitution. I can see nothing in that instrument hostile to its continued existence, or to the institution of any similar remedy which the legislature might see fit to establish.

There is another view which may be taken of this case. The act of 1849, respecting the recorder of Troy, also confers upon that officer " the powers of a judge of the Supreme Court at chambers." The proceedings supplementary to the execution may be conducted by a judge of the Supreme Court, when the judgment was in that court. In such cases the things to be done by the judge may be properly considered as belonging to that class of business which is transacted by a judge at chambers. A case was referred to on the argument holding that in this aspect of it the statute in question could not be reconciled with the constitution. (*Griffin* v. *Griffith*, 6 *How. Pr. R.*, 428.) The argument by which that proposition is sustained is, in some espects, similar to that which I have been examining. The legislature, it is said, having provided for a Supreme Court having general jurisdiction in law and equity, and having, by a special provision, authorized the legislature to charge the county judge with such duties as may be required of him by law, and having also provided, in certain cases, for the election of local

officers to exercise such powers, in special cases, as may be provided by law, and having, moreover, expressly abrogated the office of Supreme Court commissioner, there results an implication, as strong as an express provision, that the mass of business relating to suits in the Supreme Court heretofore transacted out of court by the judge, and by Supreme Court commissioners, must hereafter be performed by the judges themselves, except so far as it may be devolved upon county judges and the local officers referred to, and that it cannot now be committed to any other class of existing officers. (*Const.*, art. 6, §§ 3, 14; *art.* 14, §§ 8, 12.) If this was the design of the convention, it has not, in my opinion, been expressed with sufficient distinctness to form the ground of a legal judgment. There may have been other reasons than those suggested for abolishing the office of Supreme Court commissioner. Those officers had become very numerous, their appointment in different localities having been provided for by a great number of special statutes. (1 *R. S.*, 96, 3*d ed.*) There may have been reasons for putting an end to this class of officers quite distinct from the motive which would prohibit the legislature from committing to existing functionaries the performance of the duties with which they had been charged. The duties themselves were not abolished, and could not be without changing the practice of the court. The circumstance that a provision was made for giving additional powers to the county judges in the discretion of the legislature does not much advance the argument. The office of county judge was provided for by the constitution, and it was natural its duties should have been marked out as far as was practicable, and that the power of the legislature to add to its functions should have been mentioned; and so with the local officers. I see nothing inconsistent in these provisions with the power of the legislature to provide for the transaction of the chamber business of the Supreme Court by committing it to existing judicial

officers in the manner which has been done by the act under consideration.

It has been decided in this court that a receiver under these proceedings may sustain an action to impeach a conveyance, made by a debtor, for fraud against creditors; and the same case holds that the real estate of the debtor, as well as the personal property, is subject to this remedy. (*Porter* v. *Williams*, 5 *Seld.*, 142; *Chautauque Bank* v. *White*, 2 *Seld.*, 236.)

The judgment of the Supreme Court must be reversed; but, according to a stipulation in the case, the defendant is to have leave to amend by putting in a new demurrer or answer, on payment of costs, and compliance with such other terms as may be imposed by the Supreme Court.

ROOSEVELT, J.   The question raised in this case turns upon the validity of the act of the legislature giving to the recorder of Troy the power of conducting proceedings supplementary to judgment of the Supreme Court.

By the eighth section of the fourteenth article of the constitution "the offices of Supreme Court commissioner, master in ·Chancery, &c. (except as therein otherwise provided), are abolished."

The direct effect of this provision — and probably its leading if not its only object — was to dismiss a host of existing incumbents and make room for other aspirants.   While abolishing the existing office, and with it, of course, the existing officer, it carefully abstained from any prohibition against its immediate resuscitation under another, if not a similar, name.   It not only abstained from prohibiting such an act, but, in another section (*art.* 6, § 5), the convention declared expressly that "the legislature should have the same powers (generally, without specifying any particular court or officer) to alter and regulate the jurisdiction and proceedings in law and equity as they had theretofore possessed."   What, then, is there to prevent the legislature

from "altering the jurisdiction" of the recorder of Troy so as to include in his powers authority to conduct "supplementary proceedings?" He need not, for that purpose, be made even a commissioner. Supplementary proceedings, so called, were no part of the functions of a commissioner at the date of the constitution. They did not then exist, but were the subsequent offspring of the new Code. To confide the conduct of them, therefore, to the recorder was not in effect to revive and to confer upon him to some extent the "abolished" office of Supreme Court commissioner.

But even if it were so, the objection would have little force; it certainly would not be insuperable. The objection assumes that the aim of the constitution was to get rid of the existing office as well as of the existing incumbents. And is not the office, in the sense of the objection, effectually got rid of by transferring its functions (not abolishing them) to another officer, the continuance of whose office was both recognized and provided for? In that view I see nothing, either in the letter or in the spirit of the constitution, to prevent the legislature from confiding the conduct of the newly instituted proceedings even to the sheriff. Indeed, if the incumbent of that office were always, or usually, what he ought to be, there would seem to be a peculiar fitness in such a legislative regulation of the sheriff's jurisdiction. It would be an appropriate accompaniment to his power and duty of giving effect to the process of the court and compelling the debtor to disclose and apply all his property to satisfy the judgment against him.

This interpretation, it is said, involves the constitution in inconsistency. And was not the constitution the work of inconsistent minds? Restriction and latitudinarianism were its conflicting parents. It was the offspring-not of love but of hostility. Hence we find that while abolishing the office of chancellor it has created thirty-two chancellors with the same powers under another name; that while abolishing the office of master in Chancery it has silently permitted

Hayner *v.* James.

the creation of an indefinite number of referees, who are masters both in Chancery and at law; and that while denying to the new judges "any power of appointment to public office," even to the office of clerk or crier to their own courts, it has quietly, in the matter of references, allowed them an indefinite extent of appointing patronage. It is the duty of the court, say the counsel, to put upon the constitution that construction which "harmonizes and gives effect to all its parts." The general rule is as stated; its practical application in the present instance is impossible. To give effect to all the parts of the constitution results necessarily in discord. Some parts—certainly their authors—had totally opposite views from others; and by adopting both it has become impracticable fully to carry out either. No court can reconcile that which in its nature and intent is irreconcilable.

Again, it is urged that "the abolition clause would be utterly useless if the legislature could immediately restore their (the commissioners') functions by *indirection*." I have already shown that this point, in one of its aspects, is not well taken. Enlarging the powers of a retained office leaves the reduction of the number of officers to have its full operation; and if "one object of the constitution was to limit the *number* of outside local officers having power to delay proceedings in the courts," that object clearly is not defeated by a continuance of functions admitted to be indispensable, and a transfer of them to an officer whose office is not abolished. Nor is the point referred to well taken in its other aspect. This court, whatever may be my own views, has in effect decided that the motives of the legislature are not to be inquired into, and that evasion is not to be presumed. I do not, however, mean to say that giving to the recorder of Troy the powers of a Supreme Court judge at chambers was an evasion of the constitution either in fact or in intent. The act was in every respect the same as giving the like powers to the judges of another local court in the city of

New-York.   The validity of that proceeding was established in the case of *Renard* v. *Hargous* (3 *Kern.*, 259.)

The judgment, therefore, of the Supreme Court sustaining the demurrer of the defendants should be reversed.

HARRIS, J. (Dissenting.)   Proceedings supplementary to execution are to be regarded as proceedings in the action in which the judgment, upon which the proceedings are founded, was recovered.   An order appointing a receiver upon such proceedings is an order in an action.   The three hundred and forty-ninth section of the Code accordingly provides that an appeal may be taken from an order made at a special term, or by a single judge of the same court, or a county or special county judge, in any stage of the action, including proceedings supplementary to execution.   The order appointing the plaintiff receiver, if made by a judge of the Supreme Court or a county judge, would undoubtedly have been appealable.

Had the legislature seen fit to authorize the recorder or mayor of Troy, or the sheriff or a justice of the peace, to entertain a complaint against a judgment debtor, after the return of an execution unsatisfied, and to institute summary proceedings against him, I should not feel inclined to deny the validity of such a law.   Like summary proceedings to recover the possession of demised premises, or the proceedings under the act to abolish imprisonment for debt, it might be regarded as a special statutory proceeding, entirely within the control of the legislature.

But the case now under consideration presents an entirely different question.   The recorder of Troy, assuming to be authorized by an act of the legislature, has made an order in an action pending in the Supreme Court.   It is claimed that the legislature has made him, *pro hac vice*, a judge of the Supreme Court, and clothed him with authority to act as such judge in all proceedings out of court.   Indeed, the act itself declares that it was the purpose of the legislature

Hayner v. James.

to invest this officer with all the powers which had pertained to the office of Supreme Court commissioner. This, as I understand the constitution, cannot now be done.

The office of Chancellor, Vice-Chancellor, Circuit Judge, Master in Chancery, Examiner in Chancery and Supreme Court Commissioner was abolished from and after the first Monday of July, 1847. The duties which had been discharged by the incumbents of those offices were devolved upon other officers, for whose election provision was made. It was obviously intended by the framers of the constitution, not only that these offices, as they then existed, should be abolished, but that they should not be re-created. No one would pretend that it is in the power of the legislature now to restore the Court of Chancery as it once existed, or to create the office of Chancellor; and yet this office is not more completely annulled than the office of Supreme Court commissioner. A reference to the proceedings of the convention will show that every proposition involving a continuance of that office, in any form, was rejected. A section was proposed by a distinguished member of the convention distinctly authorizing the legislature to provide for the election of commissioners in each county, to perform, among other things, the duties of a justice of the Supreme Court, but it did not prevail. (*Debates of Conv.*, *Argus Ed.*, 633.)

The multitude of offices which had been brought into existence by the legislature in all the departments of the state government, was an evil prominently before the minds of the convention. To abolish these offices and prevent their creation in future, was among the reforms which the members of that body seem to have kept steadily in view. In respect to the judicial department, with the exception of the local courts, which, with their officers, were by the twelfth section of the last article of the constitution retained during the pleasure of the legislature, the entire judicial force of the state is prescribed and limited by the sixth article.

Nor is the act in question any the less objectionable because it confers authority to make an order, in an action pending in the Supreme Court, upon an existing officer of another court. The judges of each of the courts organized under the provisions of the constitution, are confined in the exercise of their powers to their respective courts. The judges of the Court of Appeals can not sit in the Supreme Court, nor can a judge of the Supreme Court hold a county court; nor could the power to do so be conferred upon them by the legislature. It is specially provided in the constitution that *county judges* may perform such duties as may be required by law. This provision has been uniformly understood as conferring upon the legislature the power to authorize this particular class of officers to perform the duties of a judge of the Supreme Court at chambers. I am willing to assume that it was so intended. But there is nothing in the constitution from which, by any possible implication, any similar power can be inferred, in respect to any other judicial functionary. The legislature may alter, regulate and declare the jurisdiction of the court; but having done this, the prescribed jurisdiction can only be exercised by the officers provided by the constitution. (*Griffin* v. *Griffith*, 6 *How. Pr. R.*, 428; *Cushman* v. *Johnson*, 13 *How.*, 495.)

It was claimed by the plaintiff's counsel, upon the argument, that the question involved in this case had been adjudicated in *Renard* v. *Hargous* (3 *Kern.*, 259). But I do not so understand the effect of that decision. In that case, an attachment against non-resident debtors had been issued by one of the judges of the Superior Court of New-York. That the legislature might confer upon those judges as well as anybody else, the power to grant such an attachment, was not and could not well be doubted. The only question in controversy was, whether such power had in fact been conferred. I see no reason to doubt the soundness of the decision, but I cannot see that the question decided is even kindred to that now under consideration. In that

Hayner *v.* James.

case, the court was called upon to determine whether the legislature had exercised an acknowledged power. In this case, the question is whether the legislature possessed the power it has assumed to exercise. To confer upon a judge jurisdiction in a special statutory proceeding, like that of an attachment against non-resident debtors, and to authorize him to adjudicate upon questions arising in an action pending in a court of which he is not a judge, are totally different things. There is no analogy between them.

We have already seen that the order in question was an order in the action. It was an order made upon summary application, after judgment. It affected substantial rights. If made by a judge of the court in which the action was pending, or by a county judge, it would have been appealable. For the purpose of such an appeal, provision is made in the three hundred and fiftieth section of the Code, for having the order entered with the clerk as an order of the court. But in respect to the same order made by the recorder of Troy, under the act of 1849, it is, to say the least, extremely doubtful whether any appeal at all would lie. Certainly, no provision is made for such an appeal. It would, indeed, be an anomalous thing.

I am of opinion that, while it may be competent for the legislature to confer upon the recorder of Troy, or any other judicial officer, authority to perform acts which formerly pertained to the office of Supreme Court commissioner, it is not competent to authorize that officer, or any other except a county judge, to perform any judicial functions in an action pending in the Supreme Court. To this extent, therefore, the legislature has transcended its power. To this extent the act is unconstitutional.

The judgment of the Supreme Court, should be affirmed.

JOHNSON, Ch. J., concurred in this opinion, and SELDEN, J., in its result. PRATT and STRONG, Js., were for reversal, the former upon the grounds stated by COMSTOCK, J., as well as those of DENIO, J.

Judgment reversed.