THE PEOPLE, on the relation of Marquis D. L. Sharkey, plaintiffs in error, *vs.* WILLIAM H. GOODWIN, defendant in error.

The act of April 26, 1831, commonly called the "Stilwell act," has not been repealed by the Code of Proceedure, or by any provision or provisions of the latter act.

The city judge of New York has no jurisdiction to entertain proceedings under the Stilwell act.

Notwithstanding the abolition of the office of Supreme Court commissioner, by the constitution of 1846, the legislature has the constitutional power to confer on the city judge, or the recorder of the city of New York, jurisdiction to entertain proceedings under the "Stilwell act." But since the office was abolished, the legislature has not done so.

It was not the intention of the legislature, by the act of February 18, 1848, (*Laws of* 1848, *ch.* 48,) to confer upon the recorder of the city of New York, jurisdiction under the act of 1831; he not being a judge of a court of record within section 2 of the former act. And if the recorder is not a judge of a court of record, the city judge is not.

CERTIORARI to review the decision of Justice JONES of the Superior Court of the city of New York, refusing to discharge the relator on *habeas corpus,* from imprisonment under a commitment by the city judge.

*John E. Burrill,* for the relator.

*C. A. Arthur, A. J. Vanderpoel,* and *Wm. Fullerton,* for the creditors.

SUTHERLAND, J. The prisoner was committed to, and imprisoned in, the county jail, under a commitment by city Judge Russel, purporting to have been made under the act of April 26, 1831, commonly called the "Stilwell act." Application was made in his behalf to Judge JONES, of the Superior Court, for a writ of *habeas corpus;* which writ was granted, returnable before that judge. On the return day, the sheriff produced the prisoner, and the opposing creditor also appeared, and the sheriff made a return, to

which he attached a copy of the warrant of city Judge Russel; under which he originally arrested the prisoner and held him until he received the commitment of Judge Russel, under which he then held the prisoner, a copy of which commitment he also attached to his return. The warrant and commitment purported to have been issued under the said act of 1831, commonly called the "Stilwell act," on the application of William H. Goodwin, a judgment creditor. The prisoner demurred, *ore tenus*, to the return, and insisted that he ought to be discharded on three grounds :

1st. That the act of 1831, had in effect been repealed by the provisions of the Code.

2d. That city Judge Russel had no jurisdiction to entertain proceedings under the act of 1831.

3d. That the commitment was defective, in not specifying any property, or money, or rights in action, that the prisoner was adjudged to have concealed, or to have unjustly refused to apply to the payment of the judgment against him, or any property that he had assigned, disposed of, or removed, with the intent to defraud his creditors.

After argument, Judge JONES decided : 1st. That the act of 1831, had not been repealed. 2d. That Judge Russel, *as city judge*, had competent jurisdiction to entertain proceedings under the act. 3d. That the commitment was not defective in form ; and thereupon discharged the writ of *habeas corpus*, and remanded the prisoner to the custody of the sheriff.

The proceedings before Judge JONES on the *habeas corpus* have been brought here for review, by *certiorari*.

The three questions argued before Judge JONES and decided by him are the only questions which have been argued here, and which are to be decided by us.

1st. Has the act of 1831, been repealed by the Code, or any provision or provisions of the Code ? Section 178 of the Code declares that "no person shall be arrested in a civil action, except as prescribed by this act ;" but in the same

section, immediately following, is this provision : " But this provision shall not affect the act to abolish imprisonment for debt, and to punish fraudulent debtors, passed April 26, 1831, or any act amending the same, nor shall it apply to proceedings for contempt."

In view of this express provision of the Code, I do not see how it can be said that the act of 1831, has been repealed by the Code, or any provision or provisions of it. I think Judge JONES shows satisfactorily in his opinion in this matter, that only such provisions or parts of the act of 1831, as are inconsistent with the Code, or one or more of its provisions are repealed by the Code ; that he shows that those provisions of the act of 1831, which, if Judge Russel, as city judge, had jurisdiction to entertain the proceedings under the act of 1831, and to make the commitment, authorized it, as we must presume in this case, were not repealed. Certainly there may be two processes or remedies for the same wrong, or for the collection of the same debt. Certainly two different processes, under different laws, issued by the same judge, or officer, or by different judges, or officers, for remedying the same wrong, or collecting the same debt, may be *issued*, without being inconsistent with each other, and without the jurisdiction or power *to issue* the one last issued, being at all impaired or affected, by the fact that the other had been *issued ;* but it by no means follows, that a debtor charged with a fraudulent disposition or concealment of his property to avoid the payment of a debt, can be *arrested* and imprisoned for such fraudulent disposition or concealment at the instance of his creditor, both under the " Stilwell act " and under the Code. Nor does Judge JONES in his opinion in this matter say or intimate that he could. I think Judge JONES decided the first question correctly.

2d. Had Judge Russel, as city judge, jurisdiction to entertain the proceedings before him under the " Stilwell act ? " This question assumes the regularity of the proceedings, if he, as city judge, had jurisdiction in such a case. The ques-

tion is important and I have given it a careful examination, and though it may not be entirely free from doubt, yet I must say, that I am quite clearly of the opinion, that Judge Russel, as city judge, had no jurisdiction.

The office of city judge was created by the act of April 8th, 1850, (*ch.* 205,) and that act, (§ 3,) declares, that "all the judicial powers vested in the recorder of the city of New York," are thereby conferred on the city judge, and that he "shall concurrently with said recorder, perform and discharge all judicial duties imposed upon such recorder." By the Revised Statutes, (2 *R. S.* 281, § 32,) " every recorder of a city, and every judge of the county courts of any county," of the degree of counsellor in the Supreme Court, were by virtue of their respective offices, Supreme Court commissioners. There is no doubt that the recorders of the city of New York, of the degree of counsellor, up to the time of the constitution of 1846, taking effect, had power under the Revised Statutes as Supreme Court commissioners, to entertain proceedings under the "Stilwell act."

But the constitution of 1846, abolished the office of Supreme Court commissioner, from and after the 1st Monday in July, 1847, and the case of *Renard* v. *Hargous*, (3 *Kern.* 259,) is a conclusive authority for saying that the recorder of the city of New York at that time, if he was a Supreme Court commissioner, that is, if he was of the degree of counsellor, ceased to be a Supreme Court commissioner, by the constitutional abolition of the office.

I think *Hayner* v. *James*, (17 *N. Y. Rep.* 316,) sufficient authority for saying that notwithstanding the abolition of the office of Supreme Court commissioner by the constitution of 1846, the legislature has the constitutional power to confer on the city judge or the recorder of the city of New York, jurisdiction to entertain proceedings under the "Stilwell Act." The question is, whether since the abolition of the office of Supreme Court commissioner, the legislature has done so?

The only act which has been or probably could be referred

to as conferring this jurisdiction on the recorder or city judge is the act of February 18, 1848, (*Laws of* 1848, *p.* 66.) The second section of this act provides, that applications under the act of April 26, 1831, and the acts amending the same, "may be made to any judge of a court of record in any county in which the *judgment* on which the complaint is grounded is docketed, and in which the defendant resides." The section probably only confers jurisdiction under the act of 1831, where the application is made by a *judgment* creditor.

In this case it appears from the commitment, that the claim or debt of the creditor, was a judgment of the Supreme Court, docketed in the county of New York.

If the legislature, by the act of 1848, (*Laws of* 1848, *ch.* 48,) intended to confer on the recorder of the city of New York, jurisdiction under the act of 1831, when the application was made by a judgment creditor, whose judgment had been docketed in the county of New York, then it must be conceded, I think, in this case, that the city judge had jurisdiction to entertain the proceedings before him on Goodwin's application either directly under the act of 1848, or indirectly under it, through the act of 1850, creating the office of city judge.

Did then the legislature, by the act of 1848, intend to confer the jurisdiction on the recorder of the city of New York?

This is simply a question of construction—of intention. In *Hayner* v. *James*, (17 *N. Y. Rep.* 316,) before referred to, the question was simply a question of legislative power. There was no question of intention. The act gave the jurisdiction in words to the "recorder of the city of Troy."

No doubt the court of general sessions of the peace of the city and county of New York, when the act of February 18, 1848, was passed, and now, was and is a court of record, and so were and are the courts of sessions of other counties. And no doubt the recorder of the city of New York, was, and is, by the name of his office of recorder, in fact a judge of the court of general sessions of the peace of the city and county of New

York, but the question is, was and is the recorder of the city of New York a judge of a court of record, within the meaning of the second section of said act ? The office of recorder of the city of New York is an ancient charter office. By the charter, the person holding the office of recorder had, by the charter name of his office, various charter powers. He was a member of the common council, and had power to convene it. He, with the mayor, deputy mayor and aldermen, or with any three of them, was authorized to hold courts of general sessions of the peace. He and the mayor and aldermen, were also justices of the oyer and terminer a nd jail delivery, and with any three or more of the aldermen, was authorized to hold a court of record for the trial of civil causes arising within the city. He had all these powers by the name of his office of recorder. These charter powers have been so modified, enlarged, altered or superseded by legislation since the revolution, that now it may be said that the charter powers of the recorder have been merged in subsequent legislation. By the act of February 5, 1787, section 5, the mayor, recorder and aldermen of the city of New York, or any three of them, the mayor or recorder being one, were authorized to hold courts of general sessions of the peace, and mayor's courts. The act of February 22, 1788, (*ch.* 38,) gave the mayor, recorder and aldermen of the city of New York, authority with a justice of the Supreme Court, to hold courts of oyer and terminer and jail delivery in the city of New York.

The act of February 27, 1821, (*ch.* 72,) provided for the appointment of a first judge of the court of common pleas, commonly called the mayor's court, and by that act (§ 6,) such first judge, and the mayor, recorder and aldermen, or any three of them, the first judge, mayor or recorder being one, has power to hold courts of general sessions of the peace, in and for the city and county of New York; and section two, of the same act, declared such first judge, and the mayor, recorder and aldermen of said city, to be judges of the court of common pleas, and authorized such first judge, or the

mayor, or recorder to hold such court, alone, or with one or more of the said judges. By this act, (§ 11,) it was made the special duty of the first judge to hold the court of common pleas, and the special duty of the recorder to hold the court of general sessions. The Revised Statutes substantially continued the organizations under the act of 1821, of the courts of common pleas and general sessions in the city of New York, and continued the special duty of the first judge to hold the court of common pleas, and the special duty of the recorder to hold the court of general sessions, (2 R. S. 215, 216, §§ 22, 23, 27, 28.) By the Revised Statutes, (2 R. S. 217, § 30,) it was made the duty of two of the aldermen, when notified or required, to attend *as judges* of the court of general sessions. The act of May 12, 1847, (*ch.* 255,) provided for the election of three judges of the court of common pleas for the city and county of New York.

The result of the charter provisions and legislative acts which have been referred to was, that when the act of February 18, 1848, was passed, the three elected judges, and the mayor, recorder and aldermen, were declared by law to be judges of the court of common pleas in the city of New York but the court could be held by the three elected judges, mayor or recorder, either alone, or with one or more of the other judges, though it was the special duty of the three elected judges to hold the court ; and the three elected judges of the common pleas, and the mayor, recorder and aldermen, or any three of them, one of the three being one of the three elected judges, mayor or recorder, were declared by law to have power to hold courts of general sessions in and for the city and New York, though it was the special duty of the recorder to hold such courts of general sessions. Now were the mayor and aldermen, judges of courts of record, within the meaning of section 2 of the act of 1848 ? Did the legislature by that act, intend to confer on them the jurisdiction conferred in general words, on judges of courts of record by that section ? These questions must be answered in the

negative. Why? Plainly because neither the mayor, nor aldermen were commonly called judges. Even when sitting as judges and exercising their judicial functions they were not commonly called judges or judges of courts of record. They were commonly called, and known, and spoken of by their charter official names, even, when acting as judges of either court. And what more natural? A reference to the provisions of the charter and acts of the legislature which have been mentioned will show that all the judicial powers given to the mayor were given to him as mayor, by the name of his charter office, and that all the judicial powers given to the aldermen, were given to them as aldermen, by the name of their charter office. It may be said that the judicial functions of the mayor and aldermen were attached to their charter offices. What more natural or probable, then, than that they should retain their charter official names, even when acting as judges?

Now, it is not to be presumed, that section 2 of the act of 1848, was worded after the charter provisions and acts of the legislature which have been referred to had been looked up, and searched into, and considered for the purpose of finding out, who, or what city charter officers, had *power* to hold or sit as judges in courts of record, in the city of New York. It is not to be presumed that the section was worded with reference to the very peculiar organizations of the courts of common pleas and general sessions in the city of New York. But it is to be presumed that the legislature meant by the words " any judge of a court of record " in that section, any judge of a court of record commonly called judge, and known and spoken of, as a judge of a court of record. The legislature in wording acts, must be presumed to use words as they are commonly or ordinarily used, unless there is something in the context, or the purpose of the act, showing that they were intended to be used in a technical, or unusual sense.

Now, all that has been said as to the mayor and aldermen

being judges of a court of record within section 2 of the act of 1848, applies to the recorder. Why not? True, it had been his special duty to hold the court of general sessions since 1821, but he was by statute declared, in words, to be a judge of the court of common pleas, and as I understand it, had power, alone, to hold that court. But he was not when the act passed, and never had been, and is not now, commonly called judge, or a judge, even when actually holding the court of general sessions.

If the recorder is a judge of a court of record, within the meaning of the act, is it as a judge of both courts, and if not, of which? Are county judges, *as judges of courts of sessions*, and the justices of the peace sitting with them as judges of the courts of sessions, judges or judges of courts of record within the meaning of the act? It will hardly be pretended that they are.

Moreover, the act gives the jurisdiction to " any judge of a court of record, in any county, in which the *judgment* on which the application is grounded, is docketed and in which the defendant resides." When the act was passed, there were in the city of New York, three judges of the Superior Court, and three judges of common pleas, elected *as judges* of those courts, and commonly called judges, or judges of their respective courts. The jurisdiction of the recorder, under the statutory duty to hold courts of general sessions, was and had been for a long time, *practically* exclusively criminal. Considering the abolition of the office of Supreme Court commissioners by the constitution of 1846, is it probable that it was intended by the general words, "any judge of a court of record" to include the recorder, and thus make him a *quasi* Supreme Court commissioner to enforce judgments of civil courts, under the act of 1831, the proceedings under the act being civil, and not criminal. (*Moak* v. *DeForrest*, 5 *Hill*, 605.) I think not.

If the recorder was not, and is not, a judge of a court of record within section 2 of the act of 1848, it cannot be pre-

tended that the city judge is.   At all events I shall assume this will not.be pretended.

If the city judge had no jurisdiction, the proceedings before him were void, and his commitment void, and the prisoner should be discharged from his imprisonment.

I think Judge JONES came to an erroneous conclusion on the question of jurisdiction, and that the proceedings before him on the *habeas corpus* should be reversed, and the prisoner discharged.

Of course it is unnecessary to pass upon the third question, whether the commitment was defective on its face.

INGRAHAM, J. concurred.

GEO. G. BARNARD, P. J. dissented.

Proceedings reversed.

[NEW YORK GENERAL TERM, January 6, 1868.   *Geo. G. Barnard, Ingraham* and *Sutherland,* Justices.]