Jones, J.
The relator, being held in custody by the sheriff, under a commitment issued by the city judge, in certain proceedings pending before him under the act entitled “An act to abolish imprisonment for debt and to punish fraudulent debtors,” passed April 26,1831, and the acts amendatory thereof, sued out a writ of habeas corpus, and now asks for his discharge on the ground that" the commitment is invalid, in that—
1st. The act of 1831 is repealed.
2d. Even if it is not repealed, the city judge has no jurisdiction to entértain proceedings under it.
*593 3d. The commitment is defective in not specifying what property, money and rights of action the relator is adjudged to have fraudulently concealed, and to have unjustly refused to apply to the payment of the judgment against him, and to have assigned, disposed of, and removed with intent to defraud his creditors.
It is not claimed that the statute of 1831 is repealed in express terms, but it is insisted that it is repealed by implication, because, as it is argued, its provisions are inconsistent with the provisions of the Code.
If section 178 of the Code read, “ Ho person shall be arrested in a civil action, except as prescribed by this act,,? and there stopped, it might be strongly urged that the act of 1831 was repealed. But this broad language is qualified by the following clause, contained in the section: “ But this provision shall not affect the act to abolish imprisonment, &e., passed April 26, 1831, or any act amending the same.”
The counsel for the relator saw the necessity of avoiding so distinct a declaration of the legislative intent as this. He therefore urged that this saving clause applied only to section 178, and that consequently if the act of 1831 was inconsistent with the other .sections of the Code, it was repealed. The argument is in fact this: although in one section of the act the legislature clearly expresses its intent, not to repeal a former act, yet as other sections of the same act seem to be inconsistent with the former act, an intent to repeal it will be implied. I think the argument unsound. An intent to repeal cannot be implied from the fact of inconsistency, when an intent not to repeal is expressed.
But does not the saving clause reach and cover all provisions of the Code which can in any way be inconsistent with the act of 1831 ?
*594 The language of the section is: “Ho person shall be arrested in a civil action, except as provided by this act; but this provision'shall riot affect,” &c. This, as it appears to me, is equivalent to saying, notwithstanding we have made provisions relative to arrests in civil actions, and have enacted that no arrests shall be made except according to those provisions, yet an arrest may be made, under the act of 1831.
But the relator’s counsel seeks to avoid the effect of this saving clause in another way. He says it is clear that notwithstanding the broad enactment that the act of 1831 shall not be affected, that act is and must necessarily be affected, otherwise the provisions of the Code cannot be in force; because if the provision of the act of 1831, that no person shall be arrested on any civil process or execution in any action on contract, except according to the provisions of that act, is still "in force, the provisions of the Code, so far as they authorize an arrest in actions on contract in a different manner than as prescribed in the act of-1831, cannot be in force. One or the other must give way; and this being so, the earlier enactment must give place to the later one. The proposition is correct. This provision of the act of 1831 is so clearly and plainlyrepugnant to the provisions of the Code relative to arrest that “it must, by reason of such repugnancy, be regarded as re-? pealed to such an extent as to permit an arrest according to the provisions of the Code. • Based on this proposition, the counsel contends that as the provision of the act of 1831, prohibiting arrest, has been abolished, the natural result from such abolition must follow, and that result, he says, is the abolition of the provision for arrests in certain cases. ' The line of argument is this : that the reason for which these various provisions of 'the act of 1831, which authorize an arrest were enacted, has ceased, because the provisions being designed to give an arrest in certain cases *595 in which, by the operation of the first section, no arrest could have been had, were it not for the subsequent provisions, and.the first section having been repealed by the provisions of the Code on the subject of arrest, which will reach all the cases in which an arrest might have been had under the act of. 1831, no reason now exists for retaining the provisions of that act authorizing an arrest, as they are no longer necessary to prevent the operation of the first section (it being no longer in force) upon cases provided for; and then he contends that the familiar principle that “ the reason of the law ceasing, the law itself ceases, also,” applies.
Again, he puts the same argument in a different shape, and contends that, by section 4 of the act of 1831, a party, to obtain a warrant, must swear that- there is a- debt or demand due him, for which the defendant cannot be arrested or imprisoned according to the provisions of the act of 1831.' This requirement, he contends, is not mere matter of form, but of substance, and was intended to confine the arrest under the. provisions of the act which authorized it to cases in which the defendant was, by other provisions of the same act, exempted from arrest, and to exclude from liability to arrest under those provisions of that act, which authorize an arrest of such persons who were not exempted from arrest under the provisions of the act. How he contends that as there is no longer any provision of the act of 1831 which prevents a defendant from being arrested and imprisoned in all cases, the affidavit required by the fourth section can no longer be made, and that in fact there is no longer any case in which an arrest can be had under the act of 1831, because under that act an arrest can only be had in cases where, -by sundry provisions of' the act, the defendant is .exempted from arrest, and there is now no case in which a defendant is exempted from arrest by that act.
*596 The argument is ingenious and forcible, and was ably urged; but there are several well established rules applicable to the construction of statutes, which, prevent its prevailing. Thus it is laid down, that “The law does not favor a repeal by implication, unless the repugnance be quite plain.” Following out this general principle, we find it held that “ although two acts are seemingly repugnant, yet if there be no clause of non. obstante in the latter, they shall if possible have such a construction that the latter may no't be a repeal of the former by implication. The same view has been taken where powers under several acts are such as may well subsist together. It is a general rule ¡ that subsequent statutes which add cumulative penalties and institute new methods of proceeding, do not repeal former penalties and methods of proceeding ordained by preceding statutes, without negative words.”
Again; it is a general rule of construction that words in a statute which have gained no well defined legal meaning shall be construed according to their natural import, and that a statute shall be so. construed as to give effect to all the words contained in it, if it is possible so to do without destroying the obvious intent of the statute. .
As I understand these principles, it is the duty of the court to endeavor so to construe a subsequent statute as to avoid a repeal of a former statute by implication. Is not the Code legitimately susceptible of a construction which will not conflict with the intention of the act of 1831 ?
The abolition of the prohibition against arrest, contained in the act of 1831, by reason of its plain repugnance to the Code provision for arrest, does not necessarily repeal the act of 1831. Effect must be given to the clause providing that the. act of 1831 shall not be affected, if it can be done without destroying the obvious intent of the act, and these words of the proviso must receive their natural meaning. Their natural meaning is, clearly, to retain *597 in force the act of 1831, and the question is, shall effect be given to the words, and if so, what effect... It is clear, as above stated, that such an effect cannot be given to them as to retain, the absolute prohibition against arrest contained in the act of 1831, because that is contrary to the obvious intent of the Code to give an arrest as therein provided. But although we are thus debarred from giving the words their full effect, yet we are bound to give them as much effect as possible consistent with the provisions of the Code; and, for this purpose, to make such modification in the words of such parts of the former act as are affected by the Code, as is necessary to prevent conflict between the two acts. Of course, such* partial effect will go to the retention of all such provisions of the act of 1831 as are not in conflict with the Code. The best mode of testing whether such conflict exists is to import the former statute into the latter, with the necessary modification of those parts clearly affected by the latter. The sections of the act of 1831 which have reference to arrests in courts of record comprise the first 29. The only modifications necessary to be made in these sections are, to strike out of section 1 the words “bio person ' shall be arrested,” &c., to and including the word “equity,” and add, at the end of section 1, the words, “ a warrant of arrest may issue against the defendant as hereinafter provided.” In sec. 3 substitute for the words “ In all cases where by the preceding provisions of this act a defendant cannot be arrested or imprisoned,” “In all cases where by the preceding sections a warrant of arrest may issue.” In section 4 substitute for the words “ for which the defendant, according to the provisions of this section, cannot be arrested or imprisoned,” the words “ and that the claim is of such nature as by the provisions of this act a warrant of arrest may issue.” A modification will be required in section 12, similar to that in the 3d section. *598 The object of sections 20 and 21 has long since ceased; they may therefore be omitted. A portion of section 29 may also be omitted, since bills of discovery are abolished.
It will be seen that the only substantial modification is the striking out of the words prohibitory of arrest and imprisonment. This is necessary because they are in direct conflict with the provisions of the Code. The other modifications are those naturally consequent upon the striking out of the prohibitory words, and necessary to give a sensible reading to the statute, after such striking out. How place these 29 sections of the act of 1831 (omitting the 20th. and 21st) thus modified, in the Code, just after section 205, and search for any inconsistency.' I fail to perceive any. There would then be two remedies by arrest; one by order, and one by warrant, the proceedings on each being essentially different. But there is no conflict. If the arrest is by order, the proceedings to be had thereon must be- according to sections 179 to 205, both inclusive, and the sections imported from the act' of 1831 would have no application, and so e converso if the arrest is by" warrant. Thus the Code would prescribe two modes in which the remedy «by arrest might be pursued, and would prescribe provisions to be followed, if the remedy" be pursued in the one mode, entirely different from those -prescribed to be followed, if the remedy be pursued in the other.
It may be bad policy to give an arrest in two distinct modes, for the same causes; but there can be no question of the power of the legislature to do so,' and courts have nothing to do with the policy of legislative acts. It may be that the courts will hold that both modes cannot be taken at once, and also that the taking of one debars a party from taking the other. That question, however, does not now arise.
*599 It may be urged that the court has no power to make the modifications in the act of 1831, above suggested as necessarily consequent on striking out the prohibitory words therein contained. The court, however, does not make these modifications. The legislature makes them. "When, in passing an act, the legislature provides therein that it shall not affect a prior act, and yet the provisions of the later act are plainly repugnant to some of the provisions of the former act, while all the provisions of the subsequent act may well consist and stand with some other of the provisions of the former act, the result of the legislation is to repeal the plainly repugnant parts, to retain the others, and to mold the language of the former act in such shape as to properly carry out the design. The duty of the court is simply to ascertain and declare what the legislative enactment is, and in doing this, it has the power to either add to or take from a former statute such words, the addition or subtraction of which must necessarily be imputed to the legislature as a necessary consequent upon the words used and intent expressed in a subsequent statute.
I see no ground upon which the act of 1831 can be regarded as repealed to any extent, further than as above indicated.
. I have given the greater attention to this part of the case because it is the first in which the question has been distinctly raised and fully argued. Heretofore the minds of lawyers and judges have been instantaneously, on the bare reading of the saving clause, brought to the conclusion that the act of 1831 is unrepealed. Thus we see, in numerous reported cases, the act is treated as still existing; and not a word falls from either judge or lawyer indicating that there existed in their minds any idea that it had been repealed.
I feel much fortified in the conclusion to which I have *600 arrived from this tacit cotemporaneous construction of the meaning of section 178 of the Code; for although a cotemporaneous construction of the meaning of words in a statute is not necessarily infallible, yet when the minds of numerous lawyers and judges with one accord, although acting independently of each other, on the mere reading of a statute, attach the same meaning to it, it shows that the language of the act conveys the meaning with such clearness and force as to leave but little room for doubt as to its proper construction.
Let us pass to the second objection. The city judge, if he has jurisdiction, derives it under the act of February 18, 1848. (Laws of 1848, p. 66.) This act provides that applications for a warrant under the act of 1831 may be made to any judge of a court of record in any county in which the judgment on which the complaint is grounded is docketed, and in which the defendant resides. The relator’s counsel contends that the courts of record here intended are' courts of record of civil jurisdiction. Under my views respecting the construction of statutes, above expressed, no such limitation can be placed on the words of this statute, unless it is absolutely necessary so to do, in order to uphold the act. It is argued it is necessary thus to limit the act, for otherwise it would be unconstitutional, inásmuch as it would in that event confer" civil jurisdiction on a criminal court, which, it is said, cannot be done under the constitution of 1846.
■ "Whether the constitution contains any limitation on the power of the legislature to confer both civil and criminal" jurisdiction on the same court, or to add to the jurisdiction of an existing criminal court a civil jurisdiction, or not, is not necessary to he here discussed. The act of 1848 does not profess to confer on any court of record, as a court, the powers therein mentioned. It simply gives to any judge of a court of record the power indicated. *601 This power is to be exercised by him independently of the powers of the court of which he is a member. I see' nothing in the constitution prohibiting the legislature from conferring on a judge of a criminal court powers to be exercised by him independently of those vested in his court.
The power to issue warrants under the act of 1831 was one which, prior to the constitution of 1846, could have been exercised by a Supreme Court commissioner. .By the constitution of 1846 the„office of Supreme Court commissioner was abolished, “ but this abolition did not annihilate the powers and duties which pertained to it. Those powers and duties were left to be bestowed by the legislature upon other classes of officers brought into existence, or suffered to exist, by the constitution.” (Hayner v. James, 17 N. Y. Rep. 316.)
By the act of 1848, one of the powers and duties of the former Supreme Court commissioner was bestowed on a certain class of officers, to wit, judges of courts of record. The term judges of courts of record is used in the act, not to indicate that the power is conferred on the courts whereof they are judges, nor that in exercising the power they are acting as judges of their court, but to indicate the class of public officers to whom the legislature intend to confide the power, and on whom it imposes the duty of exercising it. This view is not open to the objection that it is reviving the office of Supreme Court commissioner, under another name. There is no new office created. The judges are already holding office. They are public servants. The legislature says, we will impose on you as an incident to your holding of your present office, the duty of executing a special power. The power and duty still existing, as held by the Court of Appeals, there can be no reason why the legislature has not the power to provide for their execution and performance. There are, it seems *602 to me, various ways in which such provision can be made. One Way is to attach the power and duty to the persons of those holding a certain description of public office, to be exercised and performed by them as an incident to the holding of the office which they enjoy, and to be exercised and performed by them in the character of the office held by them'. Thus, under the. act of 1848, in question, a judge of a court of record exercises the power therein conferred, not as being a judge of any particular court, but simply in his definite character of a judge of a court of record, without regard to the powers, duties or jurisdiction of the particular court of which he is a member.
The relator’s counsel, however, claims that the city judge is not a judge of a court of record. But he admits that the court of sessions is a court of record, and that the city judge is authorized by law to hold that court. It seems to me this is sufficient to constitute him a judge of that-court, and to include .him as one of the class of judges intended by the act of 1848.
The first two objections to the validity of the commitment having been' decided against the relator, the third remains to be considered.
Section 9 of the act of 1831 enacts that if the officer before whom the proceeding is pending is satisfied that the allegations of the complainant are substantiated, and that the defendant has done or is about to do any one of the acts specified in the fourth section, he shall, by commitment under his hand, direct that such defendant shall be committed, &c. The statute does hot in terms require the commitment to specify the nature, amount or value of the property or rights in action which the officer is satisfied that the defendant fraudulently conceals, or which he unjustly refuses to apply to the payment of the judgment, or which he has assigned with intent to defraud his creditors, hi or do I perceive any principle of law which *603 requires it. The addition of a specification of the property can add no force to the adjudication of the officer that the defendant has done, or is about to do, any one of the acts specified in the fourth section; and it is this adjudication which warrants and sustains the commitment.
The relator’s counsel has offered but one suggestion in support of this objection. That is, that unless such specification is made in the commitment, a defendant held under the commitment can never procure his discharge under the 12th, 13th, 14th, 15th, 16th and subsequent sections of the act; for it is said that such discharge will not be granted until he discloses and assigns the property which he is adjudged to have fraudulently concealed, &e., and if there is no specification of such property he will be unable to tell what property he has been adjudged guilty of concealing, &c., and so will be unable to comply with the condition precedent to -his discharge. The argument defeats itself. It is in effect that there should be such a specification in order to enable the debtor to disclose his property and procure a discharge.
It is evident that if the officer adj udges that the debtor has concealed property, specifying it, when in fact he never had such property, or had not so much as is specified, he could not procure his discharge without inserting such property in his schedule and assigning it, which, as he claims not to have it, he could not do. His only remedy then would be by some writ of review to reverse the decision of the officer; whereas,' under the general adjudication without specification, a disclosure of some small amount would be sufficient to satisfy the words of the commitment, and to throw on the creditor the burthen of satisfying the officer to whom the application for a discharge is made that the petitioner’s proceedings are not just and fair, or that he has concealed, removed or disposed of other of his property with intent to defraud his *604 creditors. (Section 16.) Thus it seems to me this form of commitment is more favorable to the prisonér than it would be with the addition of a specification of property.
As long as the commitment stands unreversed, it is conclusive that the debtor has some property which he fraudulently conceals, or which he unjustly refuses to apply or, &c. If he has none, his remedy is by a review of the decision of the officer. But until the decision has been reviewed, it is conclusive. Consequently, on an"application for a discharge, made while the commitment stands, I do not see how the officer to whom that application is made can, under section 16, say that the proceedings of the petitioner have been just and fair, unless he avoids the effect .of 'the commitment by disclosing some property. As was said before, a small amount disclosed will avoid .the effect of the commitment, there can be no objection to requiring him to make a disclosure of some property, because the commitment is conclusive that he has some to disclose. But if he discloses some small amount, then the court cannot, from the commitment, say that he has more property; and the commitment, of itself, is no longer an obstacle to the discharge. But if, on the other hand, the defendant claims that notwithstanding the commitment he has no property, his remedy is to endeavor to reverse the decision of ■ the committing officer by some writ of review.
• Thus it seems to me a commitment in the form of the one in question is less onerous on the defendant, and less apt to form an obstacle to his discharge than one with the .addition of a specification of property.
Writ discharged, and prisoner remanded, (a)

 This decision was taken to the Supreme Court, by certiorari, which court, at a general term, reversed the same, on the ground that the city judge had no .jurisdiction. (See 50 Barb. 562.)