Alabama & Florida Railroad v. Burkett.

42   83.
94   494

# ALABAMA & FLORIDA R. R. CO. vs. BURKETT.

[PROCEEDING TO HAVE LAND APPROPRIATED TO THE USE OF RAILROAD CO.]

1. *Constitutionality of § 758 Revised Code.*—Section 758 Revised Code does not contravene the provisions of the Revised Constitution, (Article vi., §§ 1, 11,) and is constitutional, and this court will revise the action of a special judge, selected by the parties under said section of the Code. (BYRD, J., dissenting.)

2. *Evidence; opinion of witness on question of damages.*—In assessing the damages occasioned by the construction of a railroad, to a person through whose land the road passes, a witness can not state *his opinion* as to the amount of damage sustained.

3. *Damages; when private property is taken for public use.*—When private property is taken for public use, "just compensation," within the meaning of the constitution, (Bill of Rights, § 25,) must be made therefor in money, and any increased value of the lands of the owner arising

from the public works, for which the lands are taken, can not be considered in assessing the amount of compensation to be paid for the portion taken ; nor, in arriving at the amount of such compensation, can conjectural and speculative estimates, as to the possible advantages arising from the public works, be taken into the account.

4. *Same; assessment of, under act 16th February, 1854.*—The fifth section of the act of February 16th, 1854, to amend the charter of the Alabama & Florida Railroad Company, relates to the assessment of the *damages only,* sustained by the owner of the lands taken, and has no application in assessing the amount of *compensation* to be paid for the lands *actually taken.*

5. *Railway companies' interest in land appropriated; what, of value left to owner, considered, in estimating amount of compensation.*—Railway companies, by virtue of their compulsory powers, (Bill of Rights, § 25, acquire no absolute fee simple to, but only the right to use, the land for their purposes ; and compensation must be made for the value of the use appropriated ; in estimating such value, what, if anything, would be left to the land owner, of value, consistent with the enjoyment of the easement, by the railroad company, should also be considered.

APPEAL from the Circuit Court of Butler.

Tried before J. A. MINNIS, esq., as special judge, appointed under the provisions of § 758 of the Revised Code, in consequence of the incompetency of the presiding judge of said court to try the cause.

THIS was a proceeding by the Alabama & Florida Railroad company, to have certain lands belonging to James Burkett, the appellee, appropriated to its use, alleging that said company required said lands in the construction of their railroad.   The said company, not being satisfied with the award of the jury who assessed the damages to said Burkett for the land so required by the company, gave bond and appealed to the circuit court, and at the fall term, 1867, of said court, a trial was had, and judgment was rendered against said company for three hundred and fifty one dollars and costs.   The rulings of the court below on the admission of evidence, and the charges given, to which exceptions were taken, will sufficiently appear from the opinion of the court.   These rulings, and the charge of the court below, were assigned as error.

The questions arising in the case of the *Alabama & Florida Railroad Company v. Martha Powell,* being iden-

tical with those in this case, the two were submitted together, and the opinion is equally applicable to both cases.

B. F. PORTER, and RICE, SEMPLE & GOLDTHWAITE, for appellant.

WATTS & TROY, contra.

JUDGE, J.—The appellee submits a motion to dismiss the appeal, because, as is alleged, " the record shows the case was decided by no judge of Alabama ; and because no appeal lies from the decision of a judge selected by the parties, such judge not having been selected in the mode prescribed by the constitution." Section 635 of the Revised Code provides that " no judge of any court, chancellor, county commissioner, or justice, must sit in any cause or proceeding in which he is interested, or related to either party within the fourth degree of consanguinity or affinity, or in which he has been of counsel, without the consent of the parties entered of record, or put in writing, if the court is not a court of record."

The record shows that when the cause was called for trial, the presiding judge was incompetent to try it by reason of his having been engaged as counsel in the cause ; and that, therefore, J. A. Minnis, esq., an attorney of the court then present, presided in the cause during the term, by nomination of the parties, pursuant to section 758 of the Revised Code, which is as follows : " When any judge of the circuit court is incompetent to try any case standing for trial, by reason of relationship to parties, or of having been engaged as counsel in the cause, or for any other reasons, the parties to the suit must, when the cause is reached for trial, nominate some attorney present in court, who must preside as judge for the trial of such cause during that term; and if the parties fail promptly to make such selection, the clerk of the court must nominate the attorney, who shall preside over and try the cause at that term."

The effect of the motion is not to dispute the right of an incumbent to the *office* of judge.—See *Harris et al. v. Parker, Adm'r*, on the motion to dismiss the appeal, at the

June term, 1867. But the motion involves the constitutionality of section 758 of the Revised Code, quoted above. It is a principle of natural justice as well as of the common law, that no person can be a judge in his own cause. "The Mayor of Hereford was laid by the heels for sitting in judgment in a cause where he himself was lessor of the plaintiff in ejectment, though he, by the charter, was sole judge of the court."—Salk. 596 ; 2 Bac. Abr. 621. By the common law, also, members of a court, when interested, or when their relations are interested in the event of the cause, are allowed to withdraw from their seats in court ; and a judge may or may not sit in a cause in which he has been of counsel.—2 Bac. Abr. 621. Thus stood the common law at the time of the adoption of our constitution, in which it is declared that, " the judicial power of the State shall be vested in one supreme court, circuit courts to be held in each county of the State, and such inferior courts of law and equity, to consist of not more than five members, as the general assembly may, from time to time direct, ordain, and establish ;" and that "judges of the circuit and probate courts, and of such other inferior courts as may be by law established, shall be elected by the qualified electors of the respective counties, cities, or districts, for which such courts may be established."—Article VI., §§ 1, 11. I do not believe it was intended by the framers of the constitution, in vesting the judicial power of the State in certain courts, and in providing a mode for the election of the judges thereof, to overturn the principles of the common law, affecting the competency of judges, in the respects above named ; and to compel the persons clothed with judicial power in the State to sit in judgment in causes of their own, or in which they or their relations are interested, or in which they have been of counsel ; and such is not the effect of the constitutional provisions in question. Nor do I believe that these provisions *exclude* the power of the legislature to provide for the trial of such causes as the judges respectively may, by the rules of the common law, be incompetent to try, or may, in their discretion, decline to sit in judgment upon. Constitutional provisions relating to the power of a State legislature are not grants of power,

but limitations of power; and the rule in such cases is, that such provisions shall be strictly construed.—*Fletcher v. Peck*, 6 Cranch, 87 ; *Golden v. Price*, 3 Wash. C. C. R. 313. The application of this rule of construction will show, as I believe, the correctness of the conclusion that there is no constitutional inhibition of the character named. I, therefore, hold the correct interpretation of the constitution to be, that the *general* judicial power of the State is to be exercised, as vested, by the judges of the several courts who have been chosen in the mode provided; that its exercise is to be in conformity to the rules of the common law, and such regulations as may be prescribed by the legislature; and that there is no limitation upon the power of the latter to provide a mode for the trial of such causes, as the regular judges, by the rules of the common law, may decline, or be incompetent to try. If the legislature had not such power as is last mentioned, it is obvious that there might be a failure of justice in many cases for the want of a competent tribunal to try them. The conclusion as to the constitutionality of the act in question is strengthened by the fact that it has been frequently acted upon in practice, and I am not aware that it has ever before been assailed on the ground of its unconstitutionality; and this court, in one case at least, has revised the action of a special judge selected by the parties under the statute, which was equivalent to an assertion of the rightful jurisdiction of such special judge.—*Holley v. Carson*, 39 Ala. 345 ; see also, *Grinstead v. Buckley*, 32 Miss. 148. It results from what has been said, that the motion to dismiss the appeal must be overruled; and I now proceed to the consideration of the cause upon its merits.

1. The plaintiff below was introduced as a witness in his own behalf, and after stating some facts relating to the injury he had sustained by the construction of the road over his land, was asked the question, " How much in your judgment were you damaged by the railroad passing over your lands?" This question was objected to by the defendant, but his objection was overruled. The precise question involved in this action of the court was determined in the *Montgomery & West Point Railroad Company v. Varner*,

19 Ala. 185. In that case it was held that in assessing the damages occasioned by the construction of a railroad to a person through whose land the road passes, a witness can not state *his opinion* as to the amount of damage sustained. The correctness of that decision is not doubted, and it follows that the court below erred in overruling the objection to the question propounded to the witness.

2. The defendant below offered to prove " the increased value resulting to the lands of the plaintiff from the construction of defendant's road, and the probable advantage the plaintiff might derive from the construction of the road in increasing the value of his lands." This evidence was offered for the purpose, as we understand the bill of exceptions, of having taken into the account in assessing the amount of compensation to be paid to the owner for the lands taken, the increased value of the remaining lands of the owner. The court refused to permit the evidence to be introduced. And as to this question the court also charged the jury as follows: " That the value of the lands over which defendants had constructed their road, must be paid for at all events ; and that any increased prospective value accruing under section five of the act amending the charter of said railroad company, could not be considered as respected the land appropriated, but might be considered as to other damages." This charge was excepted to by the defendant.

The fifth section of the act of February 16th, 1854, to amend the charter of the Alabama and Florida Railroad Company, referred to in the charge of the court, is as follows : " That in all cases where land is condemned to the use of said company, the jury in assessing the damages sustained by the owner, shall take into consideration the increased value which will result to such lands from the construction of the road, and shall, before making the assessment, be sworn truly to enquire and assess the damages such owner may sustain, taking into consideration the probable advantages he may derive from the construction of the road in increasing the value of his lands."

The power of eminent domain is a high prerogative of sovereignty, founded upon public exigency, and is limited

Alabama & Florida Railroad v. Burkett.

in this State by the Revised Constitution, as follows: " Private property shall not be taken or applied for public use, unless just compensation be made therefor ; nor shall private property be taken for private use, or for the use of corporations other than municipal, without the consent of the owner ; *Provided,* however, that laws may be made securing to persons or corporations the right of way over the lands of other persons or corporations, and for works of internal improvements, the right to establish depots, stations, and turn outs ; but just compensation shall, in such cases, be first made to the owner."—Bill of rights, section 25.

What is *just compensation,* in such cases, within the meaning of that portion of the constitution above quoted ?

In *Vanharne's Lessee v. Darrance,* 2 Dallas, 304, in which a similar question to the one before us was involved, Mr. Justice Patterson, who held the circuit court for the district of Pennsylvania, held that no just compensation can be made in such case, *except in money.* He said, " money is a common standard, by comparison with which the value of anything may be ascertained. It is not only a sign which represents the respective value of commodities, but is a universal medium, easily portable, liable to little variation, and readily exchanged for any kind of property. Compensation is a recompense in value, a *quid pro quo,* and must be in money. True it is that land, or anything else, may be a compensation, but then it must be at the election of the party ; it can not be forced upon him. His consent will legalize the act and make it valid ; nothing short of it will have the effect."

We yield our assent to the correctness of what was said by Mr. Justice Patterson, in the quotation above made, and consequently hold the correct interpretation of our constitution to be, that when private property is taken for public use, just compensation must be made therefor, *in money.* Such being the requirement of the constitution, it follows that any increased value of the remaining lands of the owner, arising from the public works for which the lands are taken, can not be considered in assessing the

amount of compensation to be paid for the portion taken; nor, in arriving at the amount of such compensation, can conjectural and speculative estimates as to possible advantages, or disadvantages, arising from the public works, be taken into the account. If the owner's remaining lands " are appreciated, and his facilities of travel and trade increased by the improvement, these are benefits to which he is entitled, with the community in general, and for which he has to pay in common with others, in taxes and other burthens. But there can be no good reason why any more should be taken from him than others, for these common benefits."— *Woodfold v. Nashville & Chattanooga Railroad Company*, 2 Swan, 422.

We are aware that conflicting decisions have been made upon this question. We shall not attempt a review of the cases, a reference to most of which may be found in 1 Redfield on Railways, third edition, pp. 262, 269. Some of the cases make a distinction between compensation for the *property taken*, and indemnity for *damages sustained* by the severance; holding that in the first case, the value in *cash* of the property, considering its place and situation, is the compensation to which the owner, as such, is entitled; but that in the latter case, the legislature may compensate disadvantages with advantages. We do not deem it necessary to decide in the present case, whether this distinction be a sound one or not—whether the *damage* inflicted by the taking, to the extent thereof, is not, both in principle and effect, private property taken for public use, for which the owner can not be coerced to receive anything in payment but *money*. Such seems to be the law as settled in some of the States.—See cases cited in 1 Redfield on Railways, 265, 266; and see also, the case of the *Mount Washington Road Co.*, 35 New Hampshire, 134. We do not decide this question because the charge upon it in the court below was favorable to the appellant, and if erroneous, it was, as to him, error without injury. We may remark, however, that the fifth section of the act of February 16th, 1854, amending the charter of the appellant relates, as we construe it, to the assessment of the *damages only*, sustained by the owner of the lands taken; and has no application in as-

sessing the amount of *compensation* to be paid for the lands *actually taken.*

3. The court chàrged the jury, that under the charter of the appellant, it " took a fee in the lands appropriated, and not merely an use or easement;" which charge was excepted to. The general rule in this country is, that railway companies, by virtue of their compulsory powers in taking lands, acquire no absolute fee simple, but only the right to use the land for their purposes.—1 Redfield on Railways, 247. And such seems to be the proper construction of section 25 of the bill of rights, which provides for the acquisition, by compulsory process, of no other interest or estate in the lands of other persons, than the *right of way* over such lands, and the right to establish on such lands, *depots, stations,* and *turn-outs.* Compensation, therefore, must be made in every such case for the value of the use appropriated. But in estimating such value, what, if anything, would be left to the land owner of value, consistent with the enjoyment of the easement by the railroad company, should also be considered.

The rulings of the court below, inconsistent with this opinion, being erroneous, the judgment is reversed and the cause remanded.

BYRD, J.—I have grave doubts as to the question of the right of an appeal from a case like this. It seems to me that it should be treated as an arbitration. There is no law which authorizes the person selected to try the case to sign a bill of exceptions, or the taking of an appeal thereon. But it being a question of practice, I yield my opinion to that of my brethren, without intending to commit myself to the constitutionality of a law which authorizes any other person than the parties to the cause to select a judge to try a particular cause. This question is not necessarily involved in this case, for the parties selected the judge to try it.