THE STATE OF KANSAS, *ex rel.*, v. E. W. MAJORS.

1. COUNTY TREASURER; *Removal from Office; Constitutional Law.* Sections 3 and 4 of the act passed by the legislature in special session on September 21st 1874, entitled "An act to provide for the publication of statements showing the condition of county treasuries, and examinations of same, and to prevent the improper use of public moneys, and for the punishment thereof," are constitutional and valid.

2. ———— Where the board of county commissioners under said act appointed examiners, who with the probate judge made an examination, and counted the funds in the county treasurer's office, and made a written report to the county clerk showing a deficiency in said funds, and the county clerk then notified the commissioners, and they immediately met in special session and notified the treasurer, and the treasurer appeared before them, and the commissioners then made another examination of the county treasurer's office—the treasurer

making such explanations as he could, and furnishing such vouchers as he had—and the commissioners also found a deficiency in said funds, and thereupon, in order to protect the public interests made an order removing said treasurer from office, and appointed another person in his place, *held,* that the acts of the commissioners in so removing said treasurer, and in appointing another person in his place, were and are valid.

### *Original Proceedings in Quo Warranto.*

PETITION in the nature of *quo warranto,* filed in this court April 8th 1875, by the county-attorney of Crawford county, as relator, to oust *Majors* from the office of county treasurer of said county. The grounds upon which the removal was claimed are stated in the opinion.

*Daniel Scott,* county-attorney, for The State.

*Playter & Pursel,* for defendant.

The opinion of the court was delivered by

VALENTINE, J.: The constitution of the state of Kansas provides, that "All county and township officers may be removed from office in such manner and for such cause as shall be prescribed by law." (Const., art. 9, § 5.) On September 21st 1874, the legislature in special session passed an act containing among others the following provisions:

"SEC. 3. It shall be the duty of the probate judge in each county, once during each quarter of each year, without notice to said county treasurer, to examine and count the funds in the hands of the county treasurer; and the county commissioners of each county shall, prior to each examination, appoint two persons, citizens and taxpayers of the county, whose duty it shall be to assist the probate judge in making the examination aforesaid; but no person so appointed shall act as examiner more than once in the same year.

"SEC. 4. If the probate judge and the examiners find the funds in the treasury, as appears by the books of the county treasurer, they shall so certify in a report to be filed with the county clerk, and make oath to the same; and if they find a deficiency of funds in the treasury, they shall report the facts immediately in writing to the county clerk, and the county clerk shall immediately notify the county commissioners of

29—16 KAS.

the filing of said report, and the county commissioners shall meet forthwith and take such action as may be necessary to preserve and protect the funds of the county, and also to take any other action that may in the judgment of the commissioners be necessary and proper to protect the public interest, including the power to suspend or remove such treasurer, and the appointment of some competent person to discharge the duties of such treasurer during the time of such suspension, or for the unexpired term in case of a removal; and the person so appointed shall give a good and sufficient bond, to be approved by the county commissioners." (Laws of 1875, pp. 263, 264, §§ 3, 4.)

On November 9th 1874, the board of county commissioners of Crawford county, in accordance. with the provisions of said act appointed two examiners to assist the probate judge in examining and counting the funds in the office of the county treasurer. The defendant, E. W. Majors, was at that time, and had been for several months prior to that time, the county treasurer of said county. The probate judge and said examiners performed their duty, and on December 4th 1874 made a written report of their proceedings to the county clerk of said county. Said report shows a deficiency in the funds of the county treasurer's office amounting to at least $3,701.35. The county clerk immediately notified the county commissioners, and they met on December 5th in special session to consider the matter. They immediately notified the treasurer, who appeared before them, and they then proceeded to make another examination of the books, papers, funds, etc., in and belonging to the county treasurer's office. The treasurer made such explanations as he could, and supplied them with such vouchers as he had. After making a full examination the commissioners found that there was a deficiency in the funds of the county treasurer's office amounting to the sum of $6,246.25. They therefore, on January 15th 1875, made the following order:

"Now therefore, in order to protect the interests of said county, the board of county commissioners, by authority in them vested by virtue of said law approved September 21st 1874, do hereby order, that E. W. Majors, county treasurer

of Crawford county, Kansas, be and is hereby removed from said office, and further order and declare the said office of county treasurer for Crawford county to be vacant."

The county board also on the same day appointed Nelson Sennit to fill said vacancy. Sennit qualified, and demanded the office, but Majors refused to give it up; and this action is now prosecuted by the county-attorney of said county for the purpose of removing Majors from said office.

The pleadings are so framed that no question is raised as to whether Majors was in fact guilty of any dereliction of duty in said office or not. The only question, under the pleadings, is, whether said proceedings of the commissioners, the probate judge, examiners, county clerk, etc., were had or not. The petition alleges them, and the answer denies them. The allegations of the petition are however amply proved by the evidence submitted to us, which of course puts an end to the issues raised by the pleadings. But a more serious question arises. Are said proceedings sufficient to authorize the present action? The defendant claims that the act of the legislature under which they were had, is unconstitutional, and urges many reasons therefor. Now we shall consider the question with reference to the present case only; for the act may be constitutional when applied to some cases, and unconstitutional as to others.

We do not think the act is unconstitutional because passed by the legislature in special session; for, although they were convened for another and different purpose, yet when they were assembled together they had the power to legislate upon any subject not specifically withdrawn from their consideration by the constitution.

We do not think that a county treasurer has such a vested right in his office that no law can be passed during his term of office creating a new cause in law for his removal therefrom, and creating a new tribunal and a new procedure for such removal, provided of course that the law shall apply to such causes of removal only as shall in fact be brought into existence subsequent to the passage of the law. The legisla-

ture may create new offices, or new tribunals; or may confer new duties—judicial, *quasi*-judicial, or ministerial—upon officers already in existence. (*In re Johnson*, 12 Kas. 102, 104, and cases there cited; *Young v. Ledrick*, 14 Kas. 92.) The title to said act is evidently broad enough to cover all the provisions contained in the body of the act.

The proceedings authorized by the act are evidently "due process of law," because the act itself is authorized by the constitution. The legislature is clearly authorized by § 5 of article 9, if not by § 1 of article 2 of the constitution, to provide for the removal of county treasurers for just such causes, by just such a tribunal, and by just such a mode of procedure, as are provided for in said act. The wisdom of conferring such plenary powers upon county commissioners in such important cases, may well be doubted. But the power of the legislature to do so, if it chooses, we suppose cannot be doubted. It was evidently the intention of the legislature to confer upon county commissioners the power to remove county treasurers by proceedings summary in their nature, and not more formal than the ordinary proceedings of county commissioners are. About the time this act was passed, and immediately prior thereto, several county treasurers had become defaulters; and evidently the legislature intended to provide a means for the removal of county treasurers more speedy in its nature, and less formal than the ordinary action in the nature of *quo warranto*. And although the proceedings may be hasty, summary, informal, and by a tribunal not skilled in the law, yet the proceedings are none the less "due process of law." (*Gilchrist v. Schmidling*, 12 Kas. 264, 271, et seq.) It has been settled for more than forty years, that the 5th article of the amendments to the constitution of the United States applies only to the government of the United States, and does not apply to the several state governments. (*Barrow v. Mayor*, &c., 7 Peters, 247.) Of course, it was necessary for the county commissioners to have jurisdiction in order to make their proceedings legal and valid. But how their jurisdiction could be questioned in this case, we cannot understand.

The law gives them jurisdiction in this class of cases. And they obtained jurisdiction of this particular case by proceeding precisely in accordance with the statute. The defendant must have had knowledge of the fact, at the time it occurred, that the probate judge and the examiners were examining his books and counting the funds in his office. Then, on the very next day after the probate judge and examiners made their report, the commissioners gave him notice thereof. And he immediately appeared before the commissioners, and seems to have been present and participating in all the proceedings pertaining to his office, until the final termination of the commissioners' examination. Did not the commissioners then have jurisdiction of his person? It is not claimed that any unfairness was practiced by the commissioners in their examination. They examined all the vouchers the defendant presented to them, and listened to all his suggestions. They undoubtedly intended to act fairly and honestly. The defendant however claims in his brief that they were mistaken; that in fact there never was any deficiency in the funds of his office since he held it. What the real facts are, we are unable to determine from anything presented to us. But the commissioners found that there was such a deficiency; and for the purposes of this case we must presume that such finding is true. The commissioners undoubtedly had jurisdiction, and whether we consider that they acted judicially, *quasi-*judicially, or ministerially, still their acts must be considered as at least *prima facie* correct until the contrary is shown, and there is nothing in the case that tends to show the contrary. We therefore think that their action in removing the defendant from the office of county treasurer is valid; and therefore judgment of ouster must be given in this case in favor of the plaintiff, and against the defendant.

All the Justices concurring.