## FINERTY et al. v. WILLIAMS.

No. 9957—Opinion Filed March 15, 1921.

(Syllabus.)

### 1. Receivers—Courts—Statutes.

Section 266, art. 13, chap. 66, Statutes 1893 of the Territory of Oklahoma and reading as follows: "A receiver may be appointed by the Supreme Court, the district court, or any judge of either, or in the absence of said judges from the county, by the probate judge"—if not put in force by section 2 of the Schedule to the Constitution, was certainly put in force in this state by being embraced in the Harris-Day Code and made to read as follows: "A receiver may be appointed by the Supreme Court, the district court, or superior court, or any judge of either, or, in the absence of said judges from the county, by the county judge"—and appears as part of section 4979, Rev. Laws 1910, as promulgated in 1913.

### 2. Same—Authority of Judge—Waiver of Objections—Presumptions on Appeal.

Where a receiver is appointed by a county judge in a matter pending in the district court, and the record fails to show the district judge was absent from the county, but the record does show that all parties were present in person and by attorneys at the hearing appointing such receiver, no objection being made or appeal taken, held, the objection waived as against collateral attack. Held, further, that it will be presumed, as against collateral attack, that the county judge found the district judge absent from the county, and found all other matters to exist necessary to give him jurisdiction to make the appointment, and this is so, even though the record is silent.

### 3. Same—Powers of County Judge—Validity of Statute—Courts.

The portion of section 4979, Rev. Laws 1910, granting authority to county judges, in the absence of the district judge from the county, to appoint receiver is not repugnant to the Constitution, and is valid. Held, further, that it was not the purpose of the Legislature to grant further equity powers to the county court, but only intending to confer authority on the person filling the office of county judge to act as a substitute judge to appoint a receiver, in the absence of the district judge from the county, in a matter pending in the district court, within and for the county.

Error from District Court, Washita County; Thomas A. Edwards, Judge.

Action by John B. Williams against F. P. Finerty and another for conversion. Judgment for plaintiff, and defendants bring error. Reversed and remanded.

Massingale & Duff and Everest, Vaught & Brewer, for plaintiffs in error.

Smith, Jones & Smith, for defendant in error.

ELTING, J. This is an action brought by John B. Williams, plaintiff below, defendant in error herein, against F. P. Finerty and C. H. Johnson, defendants below, plaintiffs in error in this appeal. We will refer to F. P. Finerty and C. H. Johnson as the plaintiffs in error and John B. Williams as defendant in error in this opinion.

On the 12th day of January, 1917, defendant in error filed a petition in the district court within and for Washita county, state of Oklahoma, Hon. Thomas A. Edwards, District Judge, against the plaintiffs in error for the illegal and wrongful conversion of 1,912 bushels of wheat and 241 bushels of oats; claiming, as the petition originally stood, a loss of 92 cents a bushel on the wheat and 40 cents on the oats, also asking for a loss of $1,250 on farm and other items, making a total amount prayed for as damages, $1,985.60, and the $1,250 alleged to be loss on farm. After the evidence was introduced, the defendant in error asked leave of the court and was permitted to amend the prayer of his petition cutting out the loss on the farm and asking for damages for the difference between the selling price of the wheat and oats and the highest market value of the grain up to the time of trial.

Almost three years prior to the filing of the instant case, and on January 19, 1914, F. C. Finerty had filed a suit in foreclosure against John B. Williams and others to foreclose a mortgage on the lands upon which the grain in controversy was raised. Said mortgage contained a provision for waiver of appraisement.

On March 3, 1916, an application for appointment of receiver was filed in said foreclosure proceedings. Said application was in words and figures as follows, omitting caption:

"Come now said plaintiff above named and prays the court to appoint a receiver in this cause for the property of the said defendants described in said plaintiff's petition herein, to take possession and charge of the same and to hold and manage the same under the orders and directions of this court and in support thereof respectively shows the court:

"1. That this action is to foreclose the mortgage described in plaintiff's petition filed herein and that the conditions of said mortgage have not been fulfilled and that the property covered by said mortgage and described in said plaintiff's petition is probably insufficient to discharge the said mortgage debt and that said defendants, J. B. Williams and Rachel L. Williams, are insolvent, and no judgment entered against the said defendants could be collected.

"2. That there is a mortgage prior and senior to plaintiff's mortgage sued on herein, for the principal sum of $3,000.00; that the amount of the indebtedness secured by said plaintiff's mortgage sued on herein amounted on the first day of December, 1913, to $1,828.39; that the delinquent interest on the said second mortgage now amounts to about $411.00; that the accrued interest on the 1st mortgage amounts to about $386.00; that the attorney's fees provided for in said note and mortgage amount to $147.00; the costs to about $75.00 and the taxes amount to about $200.00; that the interest on the indebtedness against said property is continually increasing, and that said property involved in this suit is not worth over $5,000.00 or $5,500.00.

"Wherefore, plaintiff prays the court to appoint a receiver in this cause for the property of said defendants described in said plaintiff's petition herein, and to take possession and charge of the same and to hold and manage the same under the directions of this court.

"Harry White,
"Attorney for said Plaintiff."

The petition for the appointment of a receiver, as above quoted, sets out all the statutory grounds required for such an appointment as found in the second subdivision of section 4979, Rev. Laws 1910. Said statute reads as follows:

"Second. In an action by a mortgagee for the foreclosure of his mortgage and sale of the mortgaged property, where it appears that the mortgaged property is in danger of being lost, removed or materially injured, or that the condition of the mortgage has not been performed, and that the property is probably insufficient to discharge the mortgage debt."

On June 26, 1916, an order appointing one of the plaintiffs in error in the instant case, C. H. Johnson, receiver to take charge of said lands and crops was made by L. R. Shean, county judge of the county court of Washita county, state of Oklahoma, in the absence of the district judge.

The order appointing a receiver by said county judge, omitting the caption, was in words and figures as follows:

"This cause coming on to be heard on this 26th day of June, 1916, before the undersigned, L. R. Shean, county judge of the county court of said Washita county, state of Oklahoma, in the absence of the Hon. Thomas A. Edwards, judge of the said court, within and for the said Washita county, state of Oklahoma, and in the absence of said Hon. Thomas A. Edwards of the 17th judicial district, state of Oklahoma, on the application of F. P. Finerty, substituted plaintiff in the above named and entitled cause, the said plaintiff appears by his attorney, Harry White, and said defendant, John B. Williams, appears in person and by his attorney, James L. Austin, and the said defendant, Rachel L. Williams, appears by her attorney, James L. Austin, and it appears to the court that notice of said hearing before said Hon. L. R. Shean, had been duly served on said defendants, John B. Williams and Rachel Williams, said application of the said receiver to take charge of the property described in plaintiff's petition and said cause, in which lots three (3) and four (4) and the east half of the southwest quarter of section nineteen (19), west of the Indian Meridian; to take possession of said properties, to hold and manage same and the rents and profits thereto, and under the direction and control of said court; and the court having heard all the evidence and testimony offered by the said plaintiff and said defendants and the court having heard all the arguments and statements of counsel, and having been fully advised in the premises, finds that the said John B. Williams and Rachel Williams are both of them insolvent; and the court further finds that the note and mortgage have gone to judgment and the property thereto described, is wholly insufficient to discharge said mortgage debt; and the court further finds upon showing made and testimony produced that statements set up in the application of F. P. Finerty are true and he is entitled to have a receiver appointed to take possession and charge of said property and to hold and manage the same under direction of said court, as prayed for in his petition for receiver on file in this cause.

"It is therefore considered and ordered by the court that C. H. Johnson of said Washita county, state of Oklahoma, be and hereby is appointed as receiver of said premises, and he is hereby ordered to immediately take into his possession and under his control all the said property of said defendants above

described, to hold and manage the same under the orders of the said court; and,

"It is further ordered by the court that said receiver immediately take possession of harvesting, threshing and marketing of the grain and other crops growing on the said premises and that he make distribution of the proceeds in the following manner, to wit:

"1st. All expenses necessary and incident to the threshing and marketing of the said grain and other crops growing on said premises.

"2nd. That he pay the insurance on the grain and other crops growing or grown on the said premises for the year 1916.

"3d. That he pay to said defendants, John B. Williams and Rachel Williams, two-thirds of the balance of the proceeds derived from the crops growing or grown on the premises after the expenses of threshing and marketing shall have been paid and the insurance on the said crops grown or growing on the said premises for the year 1916, shall have been paid, and all expenses of receivership shall have been paid in this cause.

"4th. That the balance remaining in the hands of the said receiver to be disposed of according to said order of the said court.

"It is further ordered and adjudged that the receiver make a report of his proceedings hereunder on or before the 29th day of July, 1916, and when ordered so to do by said court.

"It is further ordered that said receiver, before entering upon said duties, make, execute and deliver a bond in the sum of twenty-five hundred ($2,500.00) dollars, said bond to be approved by the clerk of the court of Washita county, Oklahoma.

"Done in the chambers at Cordell, Oklahoma, this 26th day of June, 1916.

"L. R. Shean,
"Judge of County Court, Washita County."

On March 30, 1916, and prior to the appointment of a receiver, judgment was had upon the foreclosure proceedings. It will be noticed from the record that upon the hearing for the appointment of a receiver John B. Williams appeared in person and by his attorney of record and made no objection to the action of the county judge appointing the receiver. It is not stated in the record anywhere that the district judge is shown to be absent from the county of Washita and such absence from the county can only be concluded inferentially.

C. H. Johnson, receiver, made a report in writing of his proceedings as such receiver and filed the same in the district court of Washita county, July 31, 1916, and asked the court to approve the same. The record does not show that the report was approved.

The original plaintiff in the foreclosure suit, F. C. Finerty, dying, F. P. Finerty was made substitute plaintiff in the suit by order of the court.

The judgment of foreclosure provided for sale six months after date of judgment.

The defendant in error's right to recover for a conversion of the grain was based upon the ground that the receivership of C. H. Johnson was void in toto, and that the county judge had no authority to make the appointment, and hence his right in conversion to recover the price of the grain sold under the receivership.

In the instant suit, F. P. Finerty, one of the plaintiffs in error, raised objection to the jurisdiction of the court and the same was overruled, and afterwards the plaintiff in error filed a demurrer to the petition of the defendant in error and the same was, by the court, overruled.

On the 7th day of January, 1918, the cause in the lower court was tried without the intervention of a jury, and after the taking of the evidence the court held that:

"The receivership was void in toto by reason of the fact that the county judge had no authority or jurisdiction to appoint a receiver in said cause and that the taking of said grain, selling the same, by said alleged receiver amounted to a conversion thereof, to which findings of fact said defendants excepted at the time they were made, and the court further finds that the highest market value for wheat of the grade and kind converted since the date of said conversion was $2.80 per bushel, and the highest market value of the oats, of the grade and kind converted, since the date of said conversion, was 75c per bushel, and plaintiff having elected to take market value as his damages, instead of the value at time of conversion, with interest thereon, is, therefore, entitled to a judgment for the sum of $5,073.60 for the conversion of said wheat and the sum of $179.76 for the conversion of said oats, and in addition to said sums, the item of $100.00 paid the receiver, should be charged against said defendants, and the item of $20.00 paid for premium for receiver's bond should be charged against the defendants and an item of $12.80 court costs occasioned by the appointment of said receiver, should be charged against said defendants, and that the total judgment in which the said plaintiff herein is entitled is $5,386.16.

"At the conclusion of the evidence, plaintiff was permitted to amend his petition as to the measure of damages to conform to the proof on the highest market value of the grain between the date of conversion and the date of trial, that there should be credited upon said judgment the amount of money for which the said plaintiff has al-

ready received credit in the receivership, to wit, $1,678.91, leaving a net balance to which the said plaintiff herein is entitled to judgment in the sum of $3,707.25, to all of which said defendants except."

The defendants below, plaintiffs in error herein, filed a motion for a new trial, setting up several assignments of error, and same are restated in the petition in error herein, but in their brief they presented only their first, fifth, and sixth assignments of error, as follows, to wit:

"(1) That said court erred in overruling motion of plaintiffs in error for a new trial.

"(5) Because the court erred in holding that the order appointing a receiver was void and that the judge of the county court had no right, power or authority to appoint a receiver in a cause pending in the district court of Oklahoma, in the absence of the district judge from his district and upon a proper showing thereof.

"(6) Because the court erred in holding that the entire receivership in cause No. 1160 and styled F. C. Finerty, plaintiff, F. P. Finerty, substitute plaintiff, by order of the court, plaintiff, v. John B. Williams et al. defendants was void."

Under the numerous holdings of the Supreme Court of this state, the plaintiffs in error will be held to have waived all other assignments of error; in fact, the plaintiffs in error specifically stated they are presenting no other assignments of error in their brief.

The assignments of error as they stand really involve the discussion of but one proposition, that is, the legality of the receivership, and raise a constitutional question.

The defendant in error attacks the validity of the receivership upon three grounds, as we gather from his brief:

First. That the following portion of section 4979 of the Revised Laws of 1910 was not extended from the laws of the territory to those of the state by virtue of section 2 of the Schedule to the Constitution of the state of Oklahoma:

"A receiver may be appointed by the Supreme Court, the district or superior court, or any judge of either, or, in the absence of said judges from the county, by the county judge."

Second. That if said portion of section 4979, Rev. Laws 1910, was put in force, it is repugnant to the Constitution of Oklahoma.

Third. That if not repugnant to the Constitution, the appointment of the receivership is void for the reason that the record does not show that the district judge was absent from the county of Washita at the time of the appointment by the county judge.

Section 2 of the Schedule to the Constitution provides as follows:

"All laws in force in the territory of Oklahoma at the time of the admission of the state into the Union, which are not repugnant to this Constitution and which are not locally inapplicable, shall be extended to and remain in force in the state of Oklahoma until they expire by their own limitation or are repealed by law."

The above provision as to providing for appointment of receiver by county judge, the constitutionality of which is attacked, is a portion of section 266, art. 13, chap. 66, of the Statutes of 1893, territory of Oklahoma, and has appeared in every compilation of Oklahoma statutes since 1893, but "superior judge" has been added and "probate judge" changed to "county judge," and now appears as part of section 4979, Rev. Laws 1910.

We will make quick disposition of the first contention of the defendant in error by stating that if said provision of the statutes of the territory of Oklahoma was not extended by section 2 of the Schedule to the Constitution and put in force in the state of Oklahoma, the section as changed to include superior judge and county judge instead of probate judge was included in the Harris-Day Code and was embraced as part of section 4979 of the Revised Laws of 1910 and was promulgated in May, 1913, and was thereby put in force in this state.

We will take up the consideration of the third proposition and leave the second for the last. The third proposition is that the record does not show that the district judge was absent from the county, and hence the order appointing the receiver, for that reason, is void.

We think that the defendant in error waived such objections when he did not object to the appointment and failed to make a direct attack in the proceeding appointing the receiver. In the case of Threadgill v. Colcord, 16 Okla. 447, 85 Pac. 703, 706-7, we find the following position taken by our Supreme Court:

"So far as we can ascertain, the courts uniformly hold that collateral attacks will not be permitted upon judicial proceedings, unless such proceedings are absolutely void. It is immaterial how irregular, or how erroneous the action of the court may be, if the court had jurisdiction of the subject-matter of the action, and of the parties, the only manner in which such errors and irregularities can be cured, is by direct attack upon the proceedings, by some proper action taken in the case in which the errors are alleged to have been committed. This rule has been

applied to irregularities concerning the appointment of receivers, the manner in which the receivers' sales have been conducted, the manner in which the receivers' sales have been advertised, and errors or irregularities of every conceivable nature. A direction in a judgment of foreclosure that the sale should be made by a referee instead of the sheriff, as provided by statute, while a violation of such statute, has been upheld."

Quoting further from said case:

"Having made no timely objection in the case in which the receiver was appointed, to any of the actions of the court, and not having appealed from the judgment in that case, the plaintiff in error, Threadgill, will not now be permitted to collaterally attack any of the proceedings in that case. It may have been improper to have appointed Colcord receiver. It undoubtedly was, he being a party to the action, and a stockholder in the concern, but all the parties consented and no exception having been taken to his appointment, and no appeal having been taken by the plaintiff in error, he cannot now be permitted to question such matters collaterally, when, having the opportunity at the time of the appointment, he failed to do so directly."

See, also, in this connection, the case In re Corum et al. (Kan.) 62 Pac. 661. This case days down the proposition that there must be a direct attack, unless the order is void and not merely voidable. See County of Leavenworth v. Higginbotham, 17 Kan. 62; County of Saline v. Anderson, 20 Kan. 298; Higby v. Ayres, 14 Kan. 331; Garvin v. Jennerson, 20 Kan. 372; Hunter's Administrator v. Ferguson's Administrator, 13 Kan. 344.

We quote the following from In re Corum, heretofore cited:

"However, if the justice of the peace had been disqualified to act, it would not have invalidated the judgment that was subsequently rendered, or justify the issuance of the writ. While warrants were issued and recognizance taken by the acting police judge, the case was in fact tried, the judgment rendered, and the commitment issued by Waggoner, who was regularly holding the office of police judge. The arrests were made without process, by officers in whose presence the offenses were committed, and hence the matter of the issuance of the warrants is of little consequence at this time. Irregularities preceding the judgment rendered by a court of competent jurisdiction cannot be corrected by a proceeding in habeas corpus. The police court had jurisdiction of the petitioners and of the offense charged against them, and its judgment is not a nullity which can be collaterally attacked; and in such a case the errors, if any were committed, must be corrected by an appeal.

The district court within and for Washita county had jurisdiction of the subject-matter and of the parties. The record shows a report to have been filed by the receiver, and as far as the record discloses the regular district judge recognized the receiver as an officer of his court, since no repudiation of the receiver or his acts is shown. While no formal approval of the report is shown, we can infer a tacit approval. We hold that, under this record, the receiver was at least a de facto receiver appointed by one who was a de facto district judge. Suppose at the time of the appointment the defendant in error had objected and the parties had gone to proofs on the absence of the district judge from the county, and there had been proofs that the district judge was not absent from the county, yet the substitute judge held him to be absent, as contemplated by law, and proceeded to make the appointment, whereupon the defendant in error excepted but made no appeal; would it not be good law to hold, in a collateral proceeding, that the defendant in error had waived and could not attack the validity of the receivership? For a still greater reason would not the defendant in error be held ever afterwards to silence if he appeared at the time of the appointment and at no time objected and made no protest at any time in the receivership matter?

We not only contend that the defendant in error waived the matter, but that the presumption is that the district judge was absent from the county. The case of H. B. Claflin & Co. v. Gibson, 21 Ky. 337, 51 S. W. 439, holds the following:

"Where the county judge may appoint a receiver in the absence of the circuit judge, it will be presumed in a collateral proceeding that the county judge would not have made the order unless the circuit judge was absent from the county."

The above rule, however, is not followed in the state of Iowa, for the reason that the statute of the state of Iowa providing for substitute judges requires that the record of the proceeding must show all of the facts as provided by statute entitling him to act. Our statutes have no such requirement.

The main question in this case is: Did the Legislature of the state of Oklahoma have the power under the Constitution of this state to authorize the county judge in the various counties to appoint receivers in matters pending in the district court of the county, in the event that the district judge was absent from the county? In the event that we hold this in the affirmative, this judgment must be reversed and remanded, with instructions to render judgment for the

plaintiffs in error. The following is from Vol. 15, R. C. L., page 515:

"The ordinary incidents of human life and human affairs sometimes operate to interrupt the usual course of the administration of justice by making it impossible or inexpedient for a judge to hold a particular term of his court or to preside at the trial of a particular cause. His attendance may be prevented by sickness, death or other unavoidable cause, or his relationship to a litigant or interest in the subject matter of a suit may make it improper that he should sit in judgment. To meet such situations by filling promptly the place of an absent or disqualified judge various provisions have been made. Sometimes when a judge is disqualified or otherwise prevented from discharging the duties of his office he is authorized to call on another judge to preside in his place, or the Governor may designate another judge for that purpose, or substitution may be provided by statute, or the bar may elect one of their number as special judge to try a particular case or to hold a term of court, or the parties may agree that a member of the bar shall take the place of the disqualified judge, though this last method may sometimes infringe constitutional provisions relating to the judiciary. The matter is one of purely local regulation, and depends entirely on local statutes and Constitutions. * * * "

The following is the language of Chief Justice Marshall in the case of Fletcher v. Peck, 6 Cranch, 128:

"The question, whether a law be void for its repugnancy to the Constitution, is, at all times, a question of much delicacy, which ought seldom, if ever, to be decided in the affirmative in a doubtful case. The court, when impelled by duty to render such a judgment, would be unworthy of its station, could it be unmindful of the solemn obligation which that station imposes. But it is not on slight implication and vague conjecture that the Legislature is to be pronounced to have transcended its powers and its acts to be considered as void. The opposition between the Constitution and the law should be such that the judge feels a clear and strong conviction of their incompatibility with each other."

The following is by Chief Justice Hayes of our own Supreme Court, found in Burks v. Walker, 25 Okla. 353, 109 Pac. 544:

"Courts will not lightly declare acts unconstitutional. The fact that the Legislature has adopted an act carries with it the presumption that it is within the pale of the Constitution, and, even where there is doubt as to its constitutionality, that doubt should be resolved in favor of its validity. We conclude, therefore, that the act in question is general in its nature, and uniform in its operation."

We are going to quote and embody in this decision the following provisions of article 7

of the Constitution of Oklahoma. Section 1 reads as follows:

"The judicial power of this state shall be vested in the Senate, sitting as a court of impeachment, a Supreme Court, district courts, county courts, courts of justices of the peace, municipal courts, and such other courts, commissions or boards, inferior to the Supreme Court, as may be established by law."

A portion of section 2 reads as follows:

"The appellate jurisdiction of the Supreme Court shall be coextensive with the state, and shall extend to all civil cases at law and in equity, and to all criminal cases until a Criminal Court of Appeals, with exclusive appellate jurisdiction in criminal cases, shall be established by law."

A portion of section 10 reads as follows:

"The district court shall have original jurisdiction in all cases, civil and criminal, except where exclusive jurisdiction is by this Constitution or by law, conferred upon some other court, and such appellate jurisdiction as may be provided in this Constitution, or by law. The district courts, or any judge thereof, shall have power to issue writs of habeas corpus, mandamus, injunction, quo warranto, certiorari, prohibition, and other writs, remedial or otherwise, necessary or proper to carry into effect their orders, judgments or decrees. The district courts shall also have the power of naturalization in accordance with the laws of the United States."

A portion of section 11 reads as follows:

"There is hereby established in each county in this state, a county court, which shall be a court of record."

Section 12 reads as follows:

"The county court, coextensive with the county, shall have original jurisdiction in all probate matters, and until otherwise provided by law, shall have concurrent jurisdiction with the district court in civil cases in any amount not exceeding one thousand dollars, exclusive of interest. Provided, that the county court shall not have jurisdiction in any action for malicious prosecution, or in any action for divorce or alimony, or in any action against officers for misconduct in office, or in actions for slander or libel or in actions for the specific performance of contracts for the sale of real estate, or in any matter wherein the title or boundaries of land may be in dispute, or called in question, nor to order or decree the partition or sale of real estate, not arising under its probate jurisdiction.

"It shall have such appellate jurisdiction of the judgments of justices of the peace in civil and criminal cases as may be provided by law, or in this Constitution. The county court shall have jurisdiction concurrent with justices of the peace in misdemeanor cases, and exclusive jurisdiction in all misdemeanor cases of which justices of the peace have not

jurisdiction. In the absence of the judge of the district court from the county or in case of disqualification for any reason, the county court or judge thereof, shall have power to issue writs of injunction in matters about to be brought or pending in the district court; and to issue writs of injunction, mandamus, and all writs necessary to enforce the jurisdiction of the county courts and issue writs of habeas corpus in cases where the offense charged is within the jurisdiction of the county court or any other court or tribunal inferior to said court.

"When the county judge is disqualified in any case pending in the county court, a judge pro tempore may be selected in the manner provided for the selection of judges pro tempore in the district court."

The attorneys for the defendant in error cite in their brief the following cases: Garrett v. Ins. Co., 15 Okla. 222, 81 Pac. 421; Wetz v. Elliott, 4 Okla. 618, 51 Pac. 657; Perris v. Higley 20 Wall. (U. S.) 375, decision by Justice Miller.

The attorneys for the plaintiffs in error in their brief state that the court below based his opinion holding the receivership void upon his view of the first cited case. We have examined these cases and find that they have no application to the instant case. These cases merely hold that the Legislatures of the territories of Oklahoma and Utah did not have the power, under the Organic Acts of those territories, to grant any other powers to the probate courts than those held by such courts under the common law, and to give those grants of power it was necessary that they be sanctioned by Congress; holding that the phrase "as limited by law," as used in said Organic Act, had the effect of defining and limiting said courts to such jurisdiction as was by the common law granted to them.

The effect of these decisions is not such as even to be persuasive that our Legislature under our state Constitution did not have the power to grant additional chancery powers to our county courts; neither does it follow from their reasoning that the courts of the said territories would have denied to their Legislatures the power to designate the probate judge to act as a substitute district judge.

Our Supreme Court has interpreted the above provisions of the Constitution in several cases upholding the constitutionality of the act providing for the superior courts of the state. See In re Whitehouse, 3 Okla. Cr. 97, 104 Pac. 372; Burks v. Walker, 25 Okla. 353, 109 Pac. 544; State ex rel. Strong et al. v. Superior Court of Pottawatomie Co., 38 Okla. 366, 132 Pac. 1077; Parker v. Hamilton, 49 Okla. 693, 154 Pac. 65; Hatfield v. Garnett et al., 45 Okla. 438, 146 Pac. 24.

In two exhaustive opinions, one by Judge Owen, being the first cited case, and one by Chief Justice Hayes, being the second cited case, they seem to hold the Legislature had unlimited power in the establishment of inferior courts and in the distribution of the exercise of jurisdiction.

In the case of Burks v. Walker, cited above, Chief Justice Hayes held as follows:

"The fair intendment of section 10 is, we think, to provide that district courts shall be courts of general jurisdiction; that jurisdiction of any cause may be taken by that court unless exclusive jurisdiction has been conferred upon some other court; that whether any civil case is within the jurisdiction of the district court or within the jurisdiction of some court having concurrent jurisdiction with the district court is a matter entirely subject to legislative control. A careful reading of the various provisions of the Constitution by which jurisdiction is conferred upon all the courts, except the Supreme Court, will readily disclose that it was the policy of the framers of the Constitution in a great measure to leave the question of jurisdiction of the various courts of the state subject to legislative disposition and control. And, when the condition of the courts and their dockets at the time of the framing of the Constitution is recalled, it can be readily understood why the framers of the Constitution did not undertake to fix by hard and fast rule the jurisdiction of the inferior courts of the state. Two different judicial systems had theretofore prevailed within the territory now constituting the state. The dockets of all the courts were badly crowded, and it was impossible to foretell just what division of jurisdiction between the various courts would enable the courts of the state to dispose of the business already accumulated upon the dockets and that might reasonably be expected to arise."

Chief Justice Hayes apparently held that the district court did not have exclusive original jurisdiction and that the Constitution-makers had studiously avoided giving any inferior court exclusive jurisdiction, except such as were subject to change by the legislative power. Judge Owen also apparently held that the provisions of section 12, defining the powers of the county court, except the proviso containing specific inhibition, were qualified by the phrase, "until otherwise provided by law."

The provision of the Constitution setting out the powers of the county court indicates that it was the purpose of the Constitution-makers to make of the county court more than a probate court. They have declared it to be a court of record and granted it powers, both in law and in equity, that probate courts at common law did not possess.

Section 9 of article 7 of our Constitution, first subdivision, reads in part as follows:

"Until otherwise provided by law, the state shall be divided into 21 judicial districts and the qualified electors in each of the said districts shall elect a judge of the district court as provided herein, except in the 13th judicial district two judges shall be elected"

—and the rest of the subdivision goes on and provides for the qualifications of the district judges and their term of office.

The second subdivision of said section 9 reads as follows:

"In case of the illness of the judge elected in any district, or if for any other cause he shall be unable to preside in the district in which he was elected, the Chief Justice may designate any district judge in the state to hold any term of court in said district in lieu of the judge elected to hold the courts of said district. Whenever the public business shall require it, the Chief Justice may appoint any district judge of the state to hold court in any district, and two or more district judges may sit in any district separately at the same time. In the event any judge shall be disqualified for any reason from trying any case in his district, the parties to such case may agree upon a judge pro tempore to try the same, and, if such parties cannot agree, at the request of either party a judge pro tempore may be elected by the members of the bar of the district present at such term. If no election for judge pro tempore shall be had, the Chief Justice of the state shall designate some other district judge to try such case."

This constitutional provision provides how in case of illness a district judge's place may be filled, also whenever the press of public business requires additional judges. In either case the Chief Justice has the power to select judges to preside. It provides that two or more district judges may sit separately in the same district at the same time. It provides, also, for the parties to agree upon a judge, and in the event they cannot agree, then the bar can elect, and in the event no agreement can be had or no election may be had, then the Chief Justice may select a judge. There is no provision, however, in this section providing for the selection of substitute judge to exercise the powers of a district judge in an emergency or where a hasty remedy is needed, and in the event of the absence of the district judge from the county.

The provision as to the election of a district judge by the bar is held not to be self-executing in the case of Cowart v. State, 4 Okla. Cr. 122, 111 Pac. 672. In that case the bar undertook to select a judge to act in place of a disqualified judge, and this was

at a time before the Legislature had provided a method of selection. The defendant protested the selection and never consented. Judge Richardson, rendering the opinion, stated as follows:

"It is probable that had the defendant and the state each consented or agreed to such an election, or participated therein without entering an objection, that might be held to be an agreeing upon a judge pro tempore within the meaning of the Constitution; that is, it might be held to be an agreement that such person as might thus be designated should be the judge pro tempore."

It may be contended that, since the Constitution has provided for the election of a district judge and has provided in the provisions following in the same section as to the manner of selecting those who shall preside in certain named contingencies, no other method of substituting district judges or others to fill their place can be provided by the Legislature. It will, however, be observed that section 9 starts with the expression, "until otherwise provided by law." We see no reason why this phrase should not qualify the entire section and that hence the Legislature would have the authority to provide for substitute judges to meet contingencies not met by the constitutional provisions. But whether the phrase does or does not qualify, we are of the opinion that we should resolve any doubt as to whether there is or is not an implied inhibition in favor of the power of the Legislature. The Legislature has given all courts of record the power to grant writs of habeas corpus, and the county court being declared a court of record in the Constitution, it would have the power to grant a writ of habeas corpus.

The Constitution provides in section 12, art. 7, for the granting of writs of injunction by county judges in matters about to be brought or pending in the district court, and the Constitution also provides for the granting of injunctions, etc., and all writs necessary to enforce the jurisdiction of the county courts. It is argued that the effect of the Constitution in thus making specific grants of power to the county court limits the county court to just such jurisdiction, and that the Legislature has no authority to grant it any other jurisdiction.

All powers not specifically granted to the Congress of the United States or arising by implication therefrom are reserved to states or the people thereof, hence the Legislature does not get its power from the Constitution of this state. The people of the state have, through its Constitution-makers, the right to limit the power of the state Legislature, and any limitation on the power of the Legisla-

ture should arise only upon specific declarations and should be strictly construed against implied limitations and any doubt arising should be resolved in favor of the power of the Legislature. See Fletcher v. Peck, 6 Cranch (U. S.) 87; Golden v. Prince, 3 Wash. C. C. R. 313; Alabama & Florida R. Co. v. Burkett, 42 Ala. 86-7.

The discussions by the federal Supreme Court of the effect and scope of the specific grant of powers to the Congress are analogous and useful, in that they give the proper view of how far and in what way these grants inhibit the exercise of these same powers by the states; holding that the grant of power is not intended at all times to be exclusive in its exercise even when embodied in a Constitution. See Sturgis v. Crowninshield, 4 Wheaton, 122; Ogden v. Saunders. 12 Wheaton, 213.

The wisdom of granting this power to the county court by the Legislature is a question for the Legislature to decide, and not for this court.

As has been aptly stated by the attorneys for the plaintiffs in error in their brief, the Legislature in all probability has not the power to destroy or impair the jurisdiction of the district court as fixed by the Constitution, but it is our opinion that the legislative power is competent to deal with the question of how and when and by whom the jurisdiction of the district court may be exercised; in other words, the jurisdiction of the district court and the exercise of jurisdiction are entirely different things. The law-making power of the state has seen fit to provide for superior courts and give them the right to exercise the jurisdiction that theretofore had been exercised by the district courts and other courts, and this action of the Legislature has been upheld by the Supreme Court of this state as not impairing the jurisdiction of the other courts.

Our position in the instant case is that it was not the purpose of the Legislature in this provision of the statute authorizing the county judge to appoint a receiver in a matter pending in the district court and in the absence of the district judge from the county, to grant this power to the county judge or county court as such, but it was the purpose of the Legislature to designate a person by his title "county judge" to act as a substitute to a district judge who is absent from the county and to act for the district judge in the particular matter of appointing a receiver, and in a pending case leaving the supervision of the after acts of the receiver to the control of the regular district judge. This power of the Leg-

islature has been upheld in a number of cases in the various states and the authority of the substitute judge to act recognized and the constitutionality of the acts has been upheld.

See In re Corum et al. (Kan.) 62 Pac. 661; Taylor v. Smith, 4 Ga. 133; Etowah Mining Co. v. Wills Valley Mining Co., 106 Ala. 492, 17 South. 522; Werborn v. Kahn, 93 Ala. 201, 9 South. 729; Heard v. Murray, 93 Ala. 127, 9 South. 514; Ala. Ib Fla. Ry. Co. v. Burkett, 42 Ala. 83; People v. Gallagher, 75 Mich. 512; Pate (Executor) v. Tait, 72 Iid. 450; State v. Dufour, 63 Ind. 567; Harper (Respondent) v. Francis Jacobs et al., 51 Mo. 286; City of Muscatine v. Steck, 7 Iowa, 504; Burlington University v. Executors of Stewart, 12 Iowa, 442; Brown v. Buzan, 24 Ind. 194; In re Johnson, 12 Kan. (2d Ed. ) 102.

A note to the last case states:

"A probate judge may receive judicial powers other than those granted by the Constitution to the probate court."

Young v. Ledrick, 14 Kan. 92; State v. Majors, 16 Kan. 440; Intoxicating Liquor Cases, 25 Kan. 51; Board of Education v. Scoville, 13 Kan. 17; Ludes v. Hood, 29 Kan. 49; White Sewing Macine Co. v. Wait, 24 Kan. 100; Grinstead v. Buckley, 32 Miss. 148.

In the case In re Johnson, Justice Valentine of the Supreme Court of Kansas, in passing upon the question of the constitutional right of the Legislature to grant powers to the probate court of Kansas other than the powers designated by the state Constitution, has the following to say:

"We do not think that said sections are unconstitutional, or at most we do not think that they are unconstitutional as applied to this case. They provide that actual settlers upon the school lands who have settled thereon prior to the first day of January, 1871, and prior to the United States survey of the Osage Diminished Reserve' (Laws of 1871, pp. 315-16) and made improvements thereon, may purchase the same at the appraised value thereof, exclusive of the value of the improvements, and they also provide that the probate court shall have jurisdiction to hear and determine all questions necessary to be determined in order to ascertain whether the applicant is entitled to purchase said land under said sections, or not. It is claimed that said sections are unconstitutional because the jurisdiction that they attempt to confer upon the probate courts is not probate jurisdiction, nor any jurisdiction authorized to be conferred upon probate courts by the Constitution. For the sake of the argument, and for that only, we shall

admit all this. And in the same manner we shall further admit that it is a jurisdiction that cannot be forced upon any probate judge against his will. And still we do not think that said sections are unconstitutional. **There is no prohibition in the Constitution or elsewhere against the exercise of such jurisdiction by the probate courts.** There is no inconsistency between the exercise of this jurisdiction and the performance of any other duty that may rightfully be conferred upon probate courts. And the probate courts or judges thereof may exercise this jurisdiction as consistently with the performance of their other duties as they may take the acknowledgment of deeds, or solemnize marriages. This is a jurisdiction which has not been placed anywhere else, either by the Constitution or the statutes, and we certainly think the probate courts, or the judges thereof, may exercise it if they choose. This is not the first jurisdiction or power which has been conferred upon probate courts or probate judges, aside from the ordinary powers of jurisdiction authorized by the Constitution. They may take the acknowledgment of deeds. * * * They may solemnize marriages. * * * They may organize corporations, such as colleges, universities, and other institutions, for the purpose of promoting education, religion, morality, agriculture, manufacturing, or the fine arts. * * *"

Judge Valentine then goes on and enumerates other powers granted to the probate courts, such as granting injunction for the district court and appointing receivers for the district court, and proceedings in aid of execution in the district court. He then discusses the proposition further as follows:

"We do not decide that all these acts of the Legislature are constitutional. But we refer to them to show the general opinion upon this subject. The Legislature in enacting said sections uses the words 'probate courts', indeed. But the language must be liberally construed, so as to carry out the will of the Legislature, and not to defeat it. The Legislature undoubtedly intended to confer said jurisdiction upon the persons who exercise the jurisdiction of the probate courts, and not upon the courts themselves as probate courts. With this liberal construction said sections are valid, as far as they apply to this case. But as the Legislature has designated the persons whom they intend shall exercise this jurisdiction as 'probate courts.' it will be proper for such persons to carry on all the proceedings connected with such jurisdiction in the name of the probate courts."

The provision of the statute of Kansas is word for word like the statute for the territory of Oklahoma and which was brought over and put in force in the state of Oklahoma, with the change from "probate judge" to "county judge" and "superior judge." We have been unable to find a Kansas case directly holding on the power of the Legislature to authorize the probate judge to appoint receivers. It will be seen that Judge Valentine refused to go on record declaring all the provisions in the Kansas statutes providing for certain duties to be performed by the probate judges to be constitutional. We think, however, that Justice Brewer did uphold the constitutional right of the state Legislature to grant powers to the probate court other than those granted to it by the Constitution. See the case of Young v. Ledrick, 14 Kan. 92, in which case Justice Brewer held as follows:

"The only question in this case: Are the provisions of the statute entitled, 'Proceedings in aid of execution', and found on pages 724 to 728 of the General Statutes of the State of Kansas, constitutional and valid in so far as they attempt or purport to confer upon the probate judge power, authority, or jurisdiction to issue the process, entertain such proceedings, make the orders and punish their disobedience, as is provided for in the sections of the statutes found on the pages above mentioned? Can a probate judge be invested with judicial functions as to cases pending in the district court? This really separates itself into two questions: Can a probate judge receive other judicial powers than those granted by the Constitution to the probate court? And can judicial functions, as to cases pending in the district court, be granted to any person other than the duly-elected judge thereof? The first question is no longer an open one in this court, but has been already answered in the affirmative. In re Johnson, 12 Kan. 102, and cases cited in opinion. The second question must also be answered in the affirmative. The jurisdiction of the district court is not defined by the Constitution. It is left to the Legislature to prescribe its limits, and the manner of its exercise. While it may be that, under section 5 of art. 3 of the Constitution it is impossible for the Legislature to provide for more than one judge of a district court, and while it may be that no legislation could be upheld which excluded such single judge from a supervisory control of all the proceedings of that court, yet, within this limit, we think it competent for the Legislature to provide that other persons may exercise some judicial functions in cases pending therein. Thus the Legislature has authorized the trial of certain cases before referees. No question has been nor can well be made, as to the validity of such legislation. Yet here is an officer other than the judge who is exercising judicial functions in cases in that court. So, also, at common law the sheriff exercised judicial functions. The sheriff's jury, to assess damages, was an every-day occurrence, and in proceedings before such jury the sheriff acted as a quasi judge. In our own proceedings under the occupying-claimant act may be found something of the same nature. To require of the judge the performance of all these duties, because judicial in their

nature, would so burden him as to work a great hindrance to the dispatch of business. and the trial of cases. Now, these proceedings in aid of execution are of this same subordinate nature. It has been claimed that they were a substitute for and equivalent to the old creditor's bill. While in many respects they resemble, yet they are far from being exactly similar. See opinion of Denio. J., in the case of Hayner v. James, 17 N. Y. 316. They are based upon a judgment already obtained. They are proceedings to aid in its collection—proceedings resulting from the inability of the sheriff to accomplish such collection by means of ordinary execution. They are simply means to reach all the property of the debtor, and apply the same to payment of a debt whose existence has been already judicially determined. It needs but a little reflection to perceive that, no matter how wide may be the scope of these proceedings, they are of a subordinate nature. Judicial functions in such matters may, it seems to us, be granted by the Legislature to officers other than the regularly elected judge, subject, of course, to his supervisory control. This determines the case, and the judgment of the district court must be reversed and the case remanded for further proceedings." (All the Justices concur.)

In this brief opinion of Justice Brewer he seems to have met all the common objections raised against the power of the Legislature to assign the exercise of jurisdiction to inferior judges and substitute judges, even to the extent of holding that it did not interfere with the provision requiring but one judge to act, since in pursuing the functions assigned them the probate judges were acting in an inferior capacity and subject to the supervision of the district judge. Of course, the requirements as to only one judge acting at the same time in the county cannot apply in this jurisdiction, because our Constitution provides for more than one district judge or more than one judge exercising the jurisdiction of the district judge in the same county at the same time. It seems to answer the proposition also that before one can act and perform the duties of a district judge he must be elected or chosen as the Constitution provides. We think the above decision of Justice Brewer is decisive of this case.

It might be suggested that we could have found that the defendant in error had so conducted himself in this suit that he had estopped himself from making a collateral attack, notwithstanding it be held that the portion of section 4979, Rev. Laws 1910, is unconstitutional, and hence the county judge was without jurisdiction and hence his order appointing the receiver was a nullity and void. In our answer to the third proposition of the defendant in error, we have held that he had waived the objections as to the failure of the record to show the district judge absent from the county. We held also that it will be presumed that the judge found everything necessary to give him the right to act, even the absence of the district judge from the county. We have grave doubts that a plea of estoppel could be sustained under the facts in this case, in the event the order appointing the receiver be held void.

Upon the question of estoppel in void judgments and in collateral attacks thereon, we cite the following authorities:

Murphy et al. v. Fidelity Mutual Fire Ins. Co. et al. (Neb.) 95 N. W. 1022; Stratton v. Cain (Tenn.) 62 S. W. 231; Smith v. Superior Court of Los Angeles (Cal.) 32 Pac. 322; Smith v. Los Angeles & P. R. Co. (Cal.) 34 Pac. 242.

In the last cited case we find the following principle laid down as to estoppel in collateral attacks on void orders:

"It is doubtless true that one may so conduct himself as to be estopped from repudiating the action of a receiver, although the order by which the receiver was appointed is void. But in this case mutuality, which is one of the essential elements of estoppel, is wanting. The plaintiff herein could not, by simply intervening in the other case, receive any benefit, and no one, certainly, was prejudiced by his action therein. The receiver was not appointed upon his suggestion. If there be any act tending to validate the order appointing the receiver, such act is the act of the court, and not of this plaintiff; but, as we shall see. the order was void."

It is not necessary for us to pass upon the question of estoppel, since we hold the county judge had the right to appoint a receiver in this case. and hence the appointment is a valid one.

This cause is reversed and remanded, with instructions to enter judgment for the plaintiffs in error and defendants below and judgment against the defendant in error, plaintiff below, for costs of suit and this appeal.

HARRISON, C. J., and PITCHFORD, McNEILL, and NICHOLSON, JJ., concur.